[No. 10245. Department Two. June 25, 1912.]

Mary V. Quinn, *Respondent*, v. Peterson & Company, *Appellant*.[1]

Municipal Corporations—Construction of Drain—Liability of Contractor—Flooding by Surface Water. A city contractor making a fill in a street is not liable for the damages caused by water backing up in a depression and entering the plaintiff's cellar, where it appears that a box drain had been put in under the supervision of the city engineer to carry off the water, which was large enough to carry off the water ordinarily, but had become clogged up on one occasion, and there was no evidence of negligence or knowledge on the part of the contractor or city that the drain was insufficient or had become clogged or dammed up.

[1]Reported in 124 Pac. 502.

Appeal from a judgment of the superior court for King county, Myers, J., entered December 18, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Reversed.

*Herchmer Johnston* (*Edward N. Sears*, of counsel), for appellant.

*Lewis, Lohmann & Levine*, for respondent.

MOUNT, J.—Plaintiff brought this action to recover damages done to real and personal property caused by flooding the basement of her dwelling house. The case was tried to the court and a jury, and resulted in a verdict in favor of plaintiff for $600. The trial court entered a judgment for $400, upon plaintiff's remitting $200 from the verdict. The defendant, Andrew Peterson & Company, has appealed.

The plaintiff is the owner of a lot on the southeast corner of Ninth avenue, northeast, and East Seventy-third street, in the city of Seattle. The lot fronts to the north on Seventy-third street forty feet, and to the west on Ninth avenue one hundred feet. A one-story frame cottage was erected upon this lot. This cottage had a basement with cement wall about four feet high. The lot to the north and east was higher than to the west and south. A natural depression existed at the rear or south end of the lot, which depression carried water to the westward during the rainy season of the year. There was no water in the depression during the dry season.

In November, 1909, the city of Seattle let a contract to appellant to grade and improve Ninth avenue, northeast, and East Seventy-third street. This work was to be done according to plans and specifications furnished by the city, and under the direction and superintendence of the city engineer. By the contract, Ninth avenue and Seventy-third street were to be filled about six feet on the north and west of plaintiff's lot, so that the natural surface of plaintiff's lot

would be about four feet below the street grade. These streets at this point had never been graded or improved. Before any grading was done adjoining plaintiff's lot, the city required a drain box, twelve by seventeen inches inside measurement, to be placed in the depression, for the purpose .of carrying off water. This drain box was first placed about seven feet upon the plaintiff's lot, and extended westerly and diagonally across Ninth avenue and property westerly thereof until it reached Seventy-third street. Afterwards the drain box was extended eastward across the plaintiff's lot. While this grading work was being done, the plaintiff employed another contractor to fill her lot around her house. After the grading work had been done upon the street, there was a heavy rain, and water accumulated upon the rear of plaintiff's lot and ran into the basement under the plaintiff's house. The result was that the concrete wall cracked, the house settled and was damaged, and some personal property in the basement was destroyed. This action was subsequently brought. The city of Seattle was not made a party. The complaint alleged that the defendant, Andrew Peterson & Company,

"while engaged in grading said street, carelessly and negligently, wilfully and wantonly failed, neglected and refused to provide a drain box of sufficient size, or make other sufficient provisions for the carrying away of the water which was then flowing and which might thereafter naturally flow in the natural stream or water course; that by reason thereof the waters in said stream or water course backed up and overflowed plaintiff's said premises and filled the basement under said house,"

and caused the damage.

It will be readily seen that the action is based upon negligence. The negligence alleged is that the defendants dammed up the stream, and refused to provide a drain box of sufficient size to carry away the water. There is no evidence whatever that the defendants dammed up the water, except the mere fact that the water did not flow through the drain

box upon one occasion referred to in the testimony quoted below. The plaintiff herself testified as follows:

"Q. Do you know what provision was made, if any, to carry away water? A. There was a small box drain built to cross Ninth avenue and end at our property line. Q. Do you know how large that box was? A. No, I don't, but it was very much too small and proved to block the water. Q. What happened thereafter then with reference to the water coming down there? A. Well, the water rushed down in its usual manner until it came in contact with this box. That threw it with force right over on our property, and it had no other outlet except to run down into our basement and fill it completely."

Her son testified in regard to the size of the drain as follows:

"Q. Your grounds were two feet above the street? A. About two feet. In front of the house they stood up a little higher. And when they came along with their fill and filled it on the west side, that is, Ninth, in putting this here box across the street they put the box in too small to carry away a flow of water which came from back to the southeast of the house. Consequently, when the rains came down, this here box would not carry away the water as fast as it came there and it backed it up and surrounded the house in the rear on the east side and got to a depth of about eight inches, I should judge."

This was all the evidence on the part of the plaintiff as to what caused the water to accumulate upon the plaintiff's premises. The evidence offered by the defendant was to the effect that the drain was large enough, and that it was built and put in position under direction of the city engineer in accord with the defendant's contract with the city. One of defendant's witnesses testified as follows:

"Q. Do you know what caused the back water there? A. I presume the end of the box was stopped up with debris. Q. You don't know positively? A. I do not. Q. You don't know whether that box was large enough, do you? A. I think it was, because the box below was large enough to carry it."

It is plain from the whole evidence in the case that the box or drain was amply large enough to carry the water ordinarily, and the fact that the drain became clogged upon one occasion is not evidence that the defendant was negligent in the construction, or that it wilfully dammed up the drain. There is no evidence whatever that the city or the defendants had any notice or knowledge prior to the overflow that the drain was insufficient, or that it was clogged or dammed up, or that defendant caused debris to become lodged in the drain. There could have been no negligence, therefore, on the part of the defendants.  This case is controlled by the case of *Wood v. Tacoma*, 66 Wash. 266, 119 Pac. 859, where it was held in a case like this one that, where there was no violation of duty, there was no negligence.  The trial court should have followed the rule there stated and dismissed the case upon the defendant's motion.

The judgment is reversed, and the cause ordered dismissed.

Ellis, Morris, and Fullerton, JJ., concur.