[No. 10835. Department One. March 20, 1913.]

## C. F. KALER et al., Respondents, v. PUGET SOUND BRIDGE & DREDGING COMPANY, Appellant.[1]

JUDGMENTS—PERSONS AND MATTERS CONCLUDED—LAW OF THE CASE. Where, in an action against a city and a contractor, for damages to property through the filling up of low land under the police power, a nonsuit was granted as to the city, and no appeal was taken therefrom, a judgment against the contractor cannot be sustained on the theory that there was a taking or damaging of property without compensation first paid as required by Const., art. 1, § 16; since the nonsuit as to the city became the law of the case on that point.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—DAMAGE TO PROPERTY—DEFECTIVE PLANS—LIABILITY. While a city may fill low lands as a sanitary measure without liability for consequential damages suffered by the lands within the district filled, it is liable for injury to abutting property; and when lands originally within the district have, by the engineer having authority to exempt property, been excluded from the district, they became abutting property within the above rule.

SAME — DAMAGE TO PROPERTY — DEFECTIVE PLANS — LIABILITY OF CONTRACTOR. Where a city furnished the plan and directed the work of filling up low lands, and damages to abutting property resulted, not from any negligence or wrongdoing of the contractor, who performed the work in the manner required by the contract, the contractors stand in the relation of agents of the city and not as independent contractors, and the liability rests upon the city and not upon the contractors, who cannot be held after a nonsuit is granted as to the city.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered June 11, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages to property. Reversed.

[1] Reported in 130 Pac. 894.

*John W. Roberts* and *George L. Spirk*, for appellant.
*Thomas M. Vance* and *Harry L. Parr*, for respondents.

Chadwick, J.—This is a suit growing out of a municipal improvement in the city of Olympia, and known locally as the Swantown fill. The work was done under an invocation of the police power of the city, the ordinance reciting that it was "necessary and expedient on account of the public health, sanitation, the general welfare and the general improvement of the property located within the boundaries" of the district which are described in the ordinance. Two lots and a fraction which were included in the improvement district are owned by the plaintiffs. When the fill, which was made by a hydraulic dredger with silt and sand from the bottom of the bay, had so far progressed as to come up to plaintiff's property, they asked and were granted the right to take a part of their property out of the district. They undertook at their own expense to build a bulkhead along the line agreed upon. The material used was old bridge flooring which was placed against some fence posts. As the work progressed, this gave way. A new line was agreed upon and a new bulkhead put in. The salt water and silt ran through and over the barrier and did considerable damage to the property of the plaintiffs. A trial was had and a verdict in the sum of $500 was returned in plaintiffs' favor. The city was made a party to the suit, but it appearing on the trial that no claim had been presented within the time fixed by law for the presentation of claims, it was dismissed out of the case, and the trial proceeded against the dredging company alone.

It is not denied that the ordinance and contract under which the work was done provided that it should be done strictly in accordance with the plans and specifications furnished by the city and under the direction of the city engineer, and the testimony shows that the changes made were sanctioned by that officer. One other fact material to our discussion is that the property of the plaintiffs was bounded on the

north by a street, and on the west and south by property still within the improvement district and which the dredging company was bound to fill under its contract.

The arguments of counsel as set forth in the briefs have taken wide range, but the case, in so far as the liability of the appellant is concerned, can be quickly determined by reference to some of the cases heretofore decided by this court, and to one or two fundamental principles.  One of the suggestions made by respondents, and which should be first determined, is that there has been a taking and damaging within the meaning of the constitution, art. 1, § 16, for which they are entitled to compensation; that the city being a trespasser, appellant could not escape liability because it had a contract to do that which was unlawful.  Whether the damage suffered by respondents is such an injury as would sustain a recovery under the constitution, and to which the special statute covering the presentation of claims would not apply, is a question that cannot now be raised.  Whatever the law may be, the trial court held that the city was not liable, and no appeal having been taken from that order, it has become the law of the case (8 Cyc. 791) and respondents must recover from the appellant, if at all, upon other grounds.

This court has held that it is within the police power of the city to fill low lying ground when necessary to protect the health, comfort and convenience of the municipality, and that any consequential damage suffered because thereof is in due process of law.

"It would be manifestly destructive to the advancement or development of organized communities to put the public to the burden of rendering compensation to one, or to many, when the individual use is, or might be, a menace to the health, morals, or peace of the whole community." *Bowes v. Aberdeen,* 58 Wash. 535, 109 Pac. 369, 30 L. R. A. (N. S.) 709.

A proceeding in all respects similar to the one under discussion has been passed by this court as possessing no legal infirmity. *Martin v. Olympia,* 69 Wash. 28, 124 Pac. 214.

Consequently, the city council having determined that it was necessary to fill and improve the property of these respondents, no damages could have been recovered if the city had made the improvement in accordance with the original plan. While the city can improve property within the unsanitary district as determined by the ordinance, it does not follow that it can damage abutting property.

"Legislation tending to the preservation of the public health is favored by the courts, and is regarded as a power inherent in a municipal corporation where population is congested. 28 Cyc. 709; *Gundling v. Chicago*, 176 Ill. 340, 52 N. E. 44, 48 L. R. A. 230. But the power must be exercised within a proper limit in this case, the filling of the district— and when the city goes beyond that limit, the legislature should provide, and it has in this case provided, for compensation to those whose property stands in the way. If it did not, it would result in the confiscation of unoffending property." *State ex rel. Stalding v. Aberdeen*, 58 Wash. 562, 109 Pac. 379.

See, also, *Donofrio v. Seattle, ante* p. 178, 129 Pac. 1094; *Ferry-Leary Land Co. v. Holt & Jeffery*, 53 Wash. 584, 102 Pac. 445; *Olson v. Seattle,* 30 Wash. 687, 71 Pac. 201; *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385.

When the city, acting through its engineer, he having authority to exempt property, excluded a part of respondents' property, and drew new lines around it, it made the excluded lots abutting property, and it would become liable for such damages as might result to the abutting property from the manner in which the work was done. Now, admitting without deciding, that there was such damages for which the city could have been held, the question remains whether the city, which furnished the plan of the work and directed it in all particulars, having been dismissed out of the case, its contractor is liable. The negligence, if any, upon which a right of recovery could have been predicated, was the omission of the city to provide an adequate plan, or to make proper provision for carrying away the water and silt which, in the

natural order of things, would seep through and over the bulkheads, and to care for the water that flowed from an artesian well which was on the premises. Because of these omissions, water was left standing on the lots, and trees and vegetation were killed. It is not shown that appellant has in any manner violated its contract with the city, or has failed to follow the plans and specifications, or refused to obey the orders and directions of the city engineer.

Negligence implies a wilful fault. In keeping with this principle it has been held by this, and generally by other courts, that where the fault lies in the plan furnished by the superior and the work is done under his direction, the contractor is not liable, in the absence of negligence. If negligent, he is held for his negligence and not as a trespasser. This case in principle and in many of its facts is not unlike the case of *Quinn v. Peterson & Co.*, 69 Wash. 207, 124 Pac. 502, where a recovery was denied. In *Potter v. Spokane*, 63 Wash. 267, 115 Pac. 176, it appeared that the damage for which a recovery was sought was caused by a defective bulkhead. It was held that, the plan being at fault, the contractor, who had done the work under a contract which "provided that the work should be performed according to certain plans and specifications described in the contract, and should be under the supervision, direction and control of the board of public works of the city, and its representative, the city engineer; and that in case of improper construction and noncompliance with the contract, the board had the right to order a partial or entire reconstruction of the work, or to declare the contract forfeited and relet the same to another contractor, and to adjust the differences that should arise between the city and the contractor by reason of the change;" was not liable.

The liability of the contractor was not expressly passed on in that case, or in *Cooper v. Seattle*, 16 Wash. 462, 47 Pac. 887, 58 Am. St. 46; but it would seem to follow from the reasoning of the court that the general rule would have been ap-

plied if it had been necessary to a decision. Peter Casassa brought suit against the city of Seattle and the Lewis & Wiley Company, contractors, for damages from slides suffered because of insufficient slopes to sustain a street grade. The city was held, but the contractor was exonerated, it appearing that the work was done under the direction of the city, and that there was no sufficient evidence of negligence to charge the contracting company. *Casassa v. Seattle,* 66 Wash. 146, 119 Pac. 13.

The general rule, as found by Mr. Dillon, is thus stated:

"Where a city, *acting within its general powers,* contracts for the grading of a public street, and in accordance with the conditions of the contract and the law prescribing the same, the work is done under the immediate supervision of certain officers, whose official duty it is to superintend the work, and the damages result, not from any negligence or wrongdoing of the contractors, but from the performance of the work in the manner required by the contract, *the contractors are the agents of the city,* and the city is liable for such damages." 4 Dillon, Municipal Corporations (5th ed.), 1655n.

See, also, 28 Cyc. 1280. We conclude that appellant was not an independent contractor, and that the liability for the damages sustained rested upon the city and not upon appellant.

We shall not discuss the other questions, some of which might in any event call for a new trial, as the foregoing is determinative of the case.

Reversed, with instructions to dismiss the suit.

CROW, C. J., GOSE, PARKER, and MOUNT, JJ., concur.