[No. 19043. Department Two. March 6, 1925.]

ROY CURTIS et al., Respondents, v. PUGET SOUND BRIDGE & DREDGING COMPANY, Appellant.[1]

TRIAL (134)—VERDICT—CONSTRUCTION AND OPERATION—JOINT TORT FEASORS—VERDICT DISMISSING ONE DEFENDANT. A verdict against a servant does not release the employer for negligence in the performance of a contract, to the damage of a third person, where there was a conflict in the testimony and the jury had a right to believe that the servant was not, as alleged in the complaint, the one who was guilty of the negligence and that the master was guilty of negligence irrespective of the acts of the servant.

MUNICIPAL CORPORATIONS (409)—IMPROVEMENTS—DAMAGES—LIABILITY OF CONTRACTOR. It is no defense to a contractor's negligence in the performance of a contract, to the damage of a third person, that he was working under the supervision of the city officials, where the damage was not due to negligent or defective plans of the city, but to the contractor's own negligent acts.

SAME (409)—DAMAGES—NEGLIGENCE OF CONTRACTOR—EVIDENCE— SUFFICIENCY. There is sufficient evidence of the negligence of a contractor in building a bulkhead to hold back the flow of land sluiced in to make a fill, where there was evidence that the weight of the fill moved the bulkhead bodily, rather than that the weight of the mass squeezed out the soft material underneath, due to faulty plans, the evidence being conflicting on these points.

SAME (409). A provision in a contract for public work giving the city complete control of a water main does not relieve the contractor from liability for the breaking of the main, where there was evidence that the break was due to the negligence of the contractor in building a bulkhead and making a fill.

SAME (475, 479)—ACTIONS— DAMAGES— EVIDENCE — SUFFICIENCY. Damages to plaintiff, a third person, through the negligence of a contractor in performing a city contract, is abundantly shown where it appears that thereby the plaintiff's work was greatly impeded, the efficiency of his workmen greatly reduced, tools were lost, and much extra material necessarily purchased.

NEW TRIAL (21)—GROUNDS—VERDICT CONTRARY TO EVIDENCE. In an action against a master and servant, passion and prejudice, warranting a new trial, is not shown by the jury's discharge of the servant and holding the master for negligence in performing a con-

[1] Reported in 233 Pac. 936.

tract, where there was evidence that the servant's ideas were over-ruled and a bulkhead negligently constructed contrary thereto.

SAME (11)—GROUNDS—MISCONDUCT OF COUNSEL. Error in miscon-duct of counsel in argument to, the jury is waived where it was not objected to at the time and no request made for instructions to disregard.

TRIAL (101)—INSTRUCTIONS—REQUESTS. Error cannot be assigned upon refusing a requested instruction which was incorrect, and the matter was covered by other instructions.

MUNICIPAL CORPORATIONS (479)—IMPROVEMENTS — DAMAGES — IN-STRUCTIONS. In an action for damages to a contractor for inter-fering with and increasing the cost of his work, the jury is properly instructed that it is immaterial whether he could have made any profit on his contract.

PLEADING (101)—AMENDMENTS—DISCRETION. It is discretionary to allow trial amendments to the pleadings.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 26, 1924, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Affirmed.

*Roberts & Skeel,* for appellant.

*Griffin & Griffin,* for respondents.

MACKINTOSH, J.—The James Henry Packing plant is situated on the tide flats in the city of Seattle on the west side of Ninth avenue south. One of the buildings is approximately 240 feet square and rests upon 800 piles, and in 1923 it became necessary to raise it four and one-third feet to conform to the newly established grade on Ninth avenue south. In June the respondents took the contract to make the raise and started work in the first week of that month. The city of Seattle, de-sirous of changing the grade of Ninth avenue south and filling the street as it was extended over the tide flats, in March, 1923, had entered into a contract with the appellant to do this work. This fill was to be made by sluicing dirt from a hill lying on the opposite side

of Ninth avenue south from the Henry plant. When the respondents began work on their contract, there was an open space between the floor joists of the building and the tide flats underneath of an average of five feet, and a good deal of the earth underneath was dry and could be conveniently used by the respondents' employees in their work in preparing the building to be raised and in the work of raising it. Under the building was a couple of ditches used for the purpose of taking off water which accumulated from various sources, the water from these ditches being emptied by pumps.

The respondents had been prosecuting their work for a few days when water carrying clay from the fill being made in Ninth avenue south began to cover the earth underneath the building. This condition continued until the last day of August when the respondents completed their work, and during that time there were from 18 inches to 30 inches of slime and mud deposited underneath the building by the appellant's operations, this mess coming up to within two and one-half feet of the floor joists. This condition, the respondents contend, necessitated the use by them of more material than they otherwise would have had to use, delayed their work by reason of the fact that their employees, under the unfavorable conditions, could not do more than one-third to one-fourth of the average day's work, and resulted in the loss of some of their equipment.

This action was begun against the appellant to recover these damages, and as a co-defendant one Case was joined with the appellant, it being alleged in the complaint that Case was a vice-principal of the appellant and in charge of the work. Recovery is sought upon the ground that the appellant, in carrying out its contract with the city, was negligent in at least two particulars; namely: that, for the purpose of holding the

fill it constructed bulkheads which were defective in that they allowed a portion of the filling material to spread over the ground underneath the Henry plant; and second, that there was negligence in breaking a city water main on Ninth avenue south, which added to the flood underneath the building. After an extended trial which produced about 1,000 pages of statement of facts, the jury returned a verdict for $6,446.55 in favor of the respondents against the appellant, and a verdict discharging Case from liability. The sluicing company appeals and presents many reasons why the judgment should be reversed.

The first of the reasons suggested is that the release of Case by the jury is, in law, a release of the appellant, and that therefore the motion for judgment notwithstanding the verdict should be granted. In *Doremus v. Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, the rule was announced, which has been followed in some thirteen or fourteen cases since, that a judgment in favor of the servant, in an action to recover damages for a tort committed by the servant, is a bar to an action against the master to recover damages for the same tort of the servant, and where the servant and the master have been joined in actions of this nature a dismissal of the servant dismisses the master. With this rule of law there can be no quarrel, and were the record indisputably such as would justify the court or a jury in saying that the acts which are relied on as a basis of the respondents' cause of action were acts committed by Case as a servant or employee of the appellant, the argument of appellant would be conclusive. The record, however, discloses a dispute, and although it is true that the respondents drew their complaint on the theory that Case was the one who, as a representative of the appellant, was guilty of the negligent acts, the testimony introduced alters the situation, and it

is upon the testimony in the case and not upon the allegations in the complaint that, under the rules of practice in this court, the issue must be determined. There was testimony, which the jury had a right to believe, that Case was, as described by one of appellant's witnesses, a fill superintendent only, and that he was under the supervision of other employees and officers of the appellant, and that the principle of *respondeat superior* is not conclusive in this action, and the jury had a right to believe that the appellant was guilty of negligence independently of any negligence of Case, and under such conditions the release of the employee would not release the master. *Jones v. Seattle,* 51 Wash. 245, 98 Pac. 743; *O'Brien v. American Casualty Co.,* 58 Wash. 477, 109 Pac. 52; *Aldrich v. Inland Empire Tel. & Tel. Co.,* 62 Wash. 173, 113 Pac. 264; *Armack v. Great Northern R. Co.,* 126 Wash. 533, 219 Pac. 52.

The next reason assigned for the absolute release of the appellant from liability is that the appellant, doing work under the direction of the city officials, was only an employee of the city, and the city in this case acted within its general power for the granting of contracts for street work, and the work was done in accordance with the provisions of the contract and under the supervision of the city officials, who superintended the work, and if damages resulted from no negligence or wrongdoing of the contractor, but from the performance of the contract in the way it is required to be done by the contract, then the contractor was the agent of the city and was not liable to a person injured thereby, who must seek his redress from the city. Dillon, Municipal Corporations (5th ed.), vol. 3, page 1655; *Lund v. St. Paul, M. & M. R. Co.,* 31 Wash. 286, 71 Pac. 1032, 96 Am. St. 906, 61 L. R. A. 506; *Potter v. Spokane,* 63 Wash. 267, 115 Pac. 176; *Wood v. Tacoma,* 66 Wash.

266, 119 Pac. 859; *Casassa v. Seattle,* 66 Wash. 146, 119 Pac. 13; *Quinn v. Peterson & Co.,* 69 Wash. 207, 124 Pac. 502; *Kaler v. Puget Sound Bridge & Dredging Co.,* 72 Wash. 497, 130 Pac. 894; *Stern v. Spokane,* 73 Wash. 118, 131 Pac. 476, 46 L. R. A. (N. S.) 620; *Hieber v. Spokane,* 73 Wash. 122, 131 Pac. 478; *Larned v. Holt & Jeffery,* 74 Wash. 274, 133 Pac. 460, 46 L. R. A. (N. S.) 635; *Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820; *Granger Tel. & Tel. Co. v. Sloan Bros.,* 96 Wash. 333, 165 Pac. 102.

With this rule of law there can be no quarrel, but it is inapplicable to the present situation, for the damage which is sought to be recovered from the appellant is not the consequential damage by reason of appellant's carrying out its contract with the city, but the damage which it is alleged resulted from the negligence of the appellant in doing that work. There is no evidence in the case that the plans of the city were in any way to blame for the damage, or that they were incomplete or defective, but testimony was introduced showing appellant's own negligence. The complaint in regard to the bulkhead is based upon the fact that it was not designed to and did not hold the filled water, and the jury were entitled to believe, and evidently did believe, that the plan of the bulkhead was made and followed by the appellant and was not prescribed by the city in its contract. Under such circumstances, the rule as announced in the foregoing cases is inapplicable, and the court was correct in refusing to dismiss the appellant on this ground.

We now approach the question whether any negligence was shown upon the part of the appellant.

Considering, first, the situation in regard to the bulkheads, the contract with its appurtenances covers some thirty-five or forty typewritten pages, and the plans and specifications, which are also made a part of the

contract, appear in a bound volume of 194 printed pages. As far as our attention has been directly called to the portions which are material to this controversy, and from the independent investigation which we are able to make in the time that can reasonably be allotted to the consideration of a case in this court, we are unable to find that the city provided the manner in which the bulkheads or retaining wall which were to hold the fill on the side of the street next to the Henry plant were to be constructed. The contract simply provides for a 1½ to 1 fill, and it apparently was the intention to leave to the appellant the manner in which that fill was to be placed and protected. The plans and specifications contain a provision that the contractor: "shall at his own expense, shore up, protect and make good, as may be necessary, all buildings, walls, fences or other property injured, or likely to be injured during the progress of the work, and shall be held responsible for all damage to neighboring property, streets, or improvements, resulting from his neglect to exercise proper precaution in the prosecution of the work." There is also a provision to this effect: "Bidders must examine the location of the proposed improvement and judge for themselves the nature of the work to be done." These provisions fortify the statement first made that the manner in which the bulkheads were to be constructed, if they were necessary, was a matter for the appellant to determine.

The testimony shows that the bulkhead as it was constructed was satisfactory to the representative of the city engineer's office who was in charge of the supervision of appellant's work on behalf of the city, but this, of course, is not conclusive that the work may not have been negligently done as it relates to the liability of the appellant under the sections of the plans and specifications which we have just quoted, or under the

liability impressed by law upon one not to injure another who is in the rightful enjoyment of his property, and of course the respondents were doing work which they had a right to do and in a place where they had a right to be and the law protects them against the negligent acts of another which result in their damage.

Contention is made, however, that the damage which the respondents claim was the result of a defective bulkhead did not come from that source, that what really happened was that this fill, being made upon the soft tide lands, when the earth was deposited by the sluicing on that loblolly the weight thereof caused the entire mass to rise up on either side under the bulkheads, and that this movement squeezed out the soft substance which overflowed the ground underneath the Henry building, and in substantiation of this contention the appellant produced testimony that, prior to the movement of the loblolly, there was no giving way or breaking of the bulkhead; that the bulkhead moved as a body, together with the mass of fill that had been put in and the loblolly of the tide flats below. In other words, that what happened was that the fill material did not go through the bulkheads and break them, but that the earth underneath the fill oozed out by reason of the weight impressed upon it, and that if this resulted from negligence it was from that of the city in adopting the plan of and making the improvement, which the contractor was simply carrying out in accordance with that plan.

This is a question of fact and the jury evidently believed that the substance in which the respondents' employees were compelled to work underneath this building was not tide flat material but clay fill material, as was testified to by respondent's witnesses. The jury had a right to believe the witnesses that fill material and water were coming through the bulkhead and that

the bulkhead was improperly constructed, in that the material was not the proper kind and that the posts were not of sufficient strength or sufficiently embedded in solid ground to keep the bulkhead from bulging out, as the testimony shows it did.  For a distance of over one hundred feet on the northern end of the fill opposite the Henry plant, the bulkhead moved westerly in mass. Under such a disputed condition of facts, the court could not say there was no evidence of appellant's negligence and that the fault, if any, arose from the defective plans of the city.

The other ground of negligence is that the appellant allowed the water from the water-main on Ninth avenue south to flow over the Henry plant ground, and that this excessive amount of water, together with the debris from the fill, clogged the ditches provided for the passing off of the water under the plant and added to and aggravated the situation caused by the improper bulkhead.  Appellants contend that, under the contract, they had nothing to do with the water-main, that the city at all times was in charge of it and that the contractor never touched it, and a representative of the city engineer's office testified that the water-main was not part of the contract and that the city had complete control of it.  Testimony was also introduced that the break in the water-main occurred after the contractor's work had stopped and in no event could it have done any damage.  The testimony, however, was that something forced the water-main to the west towards the Henry plant and bent and broke it.  If this forcing and breaking came by reason of the negligence in the construction of the bulkhead which allowed the fill to exude to the westward, the provision in regard to the water pipes in the contract with the city would not relieve the appellant from liability for the extra amount of water

coming over the property through the broken water-main.

It is claimed that because the Henry plant is built on low ground where water in a certain amount continually ran under it and where it was always necessary to maintain pumps to keep the water down, that there has been no segregation by the respondents of the damage done by the water which came in naturally and that which come from the appellant's operations. The testimony, however, shows that all the water which customarily came in before the appellant did its work would not have interfered with the respondents' carrying out their contract; that the respondents had full knowledge of the situation in normal conditions and are only asking damages occasioned by abnormal conditions resulting from the deposit of material on the fill, and that the sediment so deposited filled up the ditches which otherwise would have taken care of the normal water accumulation.

The next reason given for reversal is that no damages were proved. This contention can be briefly disposed of by the statement that there is abundant testimony, which the jury had a right to believe, that the efficiency of the respondents' workmen was greatly reduced by being compelled to work in the mud and water, that many thousand extra feet of lumber were made necessary, that material had to be handled in the slime, and that tools and jacks were lost by reason of these conditions. Under such a record it cannot be successfully claimed that no damages were proved.

Leaving now the reasons urged for a judgment notwithstanding the verdict, we pass to the consideration of the reasons assigned for the granting of a new trial.

The first is that passion and prejudice were shown in the verdict. The argument on this is that the evidence against Case was much stronger than that against the

company, and the jury, having discharged Case and not the company, showed it was actuated by passion and prejudice. We cannot so view the situation. Juries sometimes move in dim and muddy ways, but when so moving the actuating force is not necessarily passion and prejudice. There was testimony introduced that Case had been overruled in his ideas and that the bulkhead was constructed contrary thereto. If this was true, the jury might well find that Case was not negligent in any way, but that his employer was.

The next reason for granting a new trial is alleged to be the misconduct of respondents' counsel in his argument to the jury. It is to be remembered that this trial lasted many days, involved complicated facts, was bitterly contested, and under such conditions considerable leniency in this respect may be indulged. Moreover, the record does not show that the appellant objected to the respondents' argument, nor was any request made to the court to instruct the jury to disregard it, and if there were any error it has been waived.

The next reason is that the court refused to submit to the jury the question of respondents' contributory negligence. In its answer, the appellant had pleaded contributory negligence and requested an instruction on that subject. The requested instruction did not contain a proper statement of the law, and moreover the court gave several proper instructions upon contributory negligence.

An instruction is urged as error which contained a statement that the contract between the appellant and the city gave the appellant no license to flood with water or mud adjoining privately owned property, and that if, in carrying out its contract, the appellant negligently damaged the respondents it would be liable in damages, and that the negligence of the city was not material to the case. The objection is to the use of the

words "no license to flood the premises," and that the jury was not to take into consideration the city's negligence. We do not find sufficient error in this instruction to hold that it was prejudicial to the extent of entitling appellant to a new trial.

The next instruction complained of is one telling the jury that it is immaterial whether respondents did or did not make a profit or sustain a loss in their contract with the packing company. This seems to properly state the law and no authority has been cited to the contrary.

The next error alleged is that the court allowed repeated amendments to the pleadings throughout the trial. This was a matter within the discretion of the trial court and we see no abuse of it. The amendments were of matters which were within the knowledge of both parties to the litigation.

Error is also assigned, without any argument and in general terms, that the court erred in refusing to charge the jury on certain matters. The assignments are so indefinite and the record is so voluminous that we will give them no more serious consideration than the appellant has apparently given them in its brief.

The last assignment is that the verdict is excessive. We have already stated enough to show that, if the jury believed the respondents' testimony in regard to the extra work and material necessitated by the appellant's acts, it was justified in returning a verdict as it did, and the testimony covering those items shows an amount justifying the verdict.

On the whole record we find nothing to justify the reversal of the case, and the judgment is therefore affirmed.

TOLMAN, C. J., HOLCOMB, and MITCHELL, JJ., concur.

FULLERTON, J., concurs in the result.