[No. 23428. Department Two. November 2, 1931.]

WILLIAM SENSKE, *Respondent*, v. WASHINGTON GAS & ELECTRIC COMPANY, *Appellant*, W. B. HOIT, *Defendant*.[1]

[1]Reported in 4 P. (2d) 523.

2

*Roberts, Skeel & Holman* and *Frank Hunter,* for appellant.

*Henderson, Carnahan & Thompson,* for respondent.

MAIN, J.—This action was brought against the Washington Gas and Electric Company, a corporation, and W. B. Hoit, one of its local managers, for the purpose of recovering damages for tuberculosis which the plaintiff contracted from inhaling carbon monoxide gas, due to the negligence of the defendants. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff and against the Washington Gas and Electric Company for the sum of eighteen thousand dollars, and a verdict in favor of the defendant Hoit. The defendant against which the verdict was rendered moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The motion for judgment notwithstanding the verdict was overruled, and the motion for new trial

was overruled, conditioned upon the plaintiff's electing to take a judgment for ten thousand dollars, which he did. Judgment was entered for this amount, from which the Washington Gas and Electric Company appeals.

The facts may be summarized as follows: The appellant, Washington Gas and Electric Company, owned and operated a plant in the city of Tacoma for the manufacture of gas, which was distributed to the inhabitants of that city and the cities of Olympia and Puyallup for domestic use, including lighting, heating and cooking. From the plant, there was a pipe line to the city of Olympia and also to the city of Puyallup. Hoit was the Puyallup manager or superintendent, and had charge of the affairs of the company in that city. Edward Fredericks was what is called installation foreman in the same city. Joseph Harris was the shop superintendent of the appellant and had charge of the distribution of the gas and the repair of the gas mains.

The respondent and his wife resided in the city of Puyallup in an apartment which contained three rooms and was approximately twenty by thirty feet, over the front end of a garage owned by the respondent. The apartment was heated by what might be termed a gas grate or radiant fire.

Shortly before midnight, January 21, 1930, Hoit checked the pressure gauge on the rear porch of his residence and observed that the pressure was decreasing instead of increasing. He thereupon telephoned his observation to the Tacoma plant, and learned that Olympia had already notified Tacoma and men were out looking for the trouble. Hoit was instructed to stand by and, if he observed the pressure getting down pretty low, to again inform Tacoma. Shortly after midnight, Hoit inquired how conditions were, and was informed that the leak had been located about two

4

miles from Tacoma and nine miles from Puyallup. Hoit visited the place where the break had occurred and, upon returning to his home, informed Tacoma of what he had ascertained at the place of the break. He was thereupon instructed by Harris

" . . . to get Mr. Fredericks and with the car proceed to notify people that had furnaces or pilot lights to apparatuses to turn them off, take care of them, and be ready in case the pressure should be gone altogether."

Puyallup has a population of approximately 7,000, and there were about five hundred gas users. Hoit and Fredericks, at about 3:30 a. m., January 22nd, started to notify the people that had furnaces or pilot lights, and finished about 6:30 that morning. They did not notify any user except those mentioned, which was a comparatively small proportion of the five hundred. At about five or six o'clock in the morning, the gas pressure ceased entirely, and, after the break was repaired, it was resumed about twenty minutes before seven.

The respondent and his wife had retired at about 1:30 a. m. on the night in question, with the radiant fire still burning. The weather was very cold at this time, being something like zero, or a little below. The windows of the apartment were frozen and were left closed. A door therefrom, which opened into the loft at the back end of the garage, was also closed. In the room were three dogs owned by the respondent. A few minutes before 7:30 a. m., the respondent and his wife were awakened by the dogs clawing at the bed clothing. At the time the room was filled with gas, and the respondent had breathed it to a considerable extent. His wife was less affected, owing to the fact that she slept with the bed clothing over her head.

On the evening of that day, a doctor was called, and thereafter the respondent was ill and unable to work, as he testifies, for a period of five or six weeks. Prior to this time, he had been in good health. August 1, 1930, owing to his continued ill health, and being unable to operate his garage, he moved to a stump ranch. As above stated, the respondent, as the result of the poisoning, as shown by the testimony offered by him, contracted tuberculosis, from which he was still suffering at the time of the trial.

■ The first question is whether the evidence was sufficient to take the charge of negligence against the appellant to the jury. The negligence charged in the complaint is that neither Hoit nor any other agent or employee of the appellant informed either the respondent or his wife of the gas being disconnected. Upon the trial, it appeared that, when the break was repaired in the line, the gas pressure was resumed without informing the users of that fact.

Illuminating gas is a dangerous thing when it is not under control, and it is incumbent upon those who deal in it as an article of merchandise to use care commensurate with its harmful nature. The degree of care must be such as an ordinarily prudent person would exercise under like circumstances in managing such an article. *Sharkey v. Portland Gas & Coke Co.,* 74 Ore. 327, 144 Pac. 1152, 145 Pac. 660; *Memphis Consol. Gas & Electric Co. v. Creighton,* 183 Fed. 552; *Sawyer v. Southern California Gas Co.,* 206 Cal. 366, 274 Pac. 544. Under the rule stated and the facts of the case now before us, whether the appellant was guilty of negligence in failing to notify the respondent that the gas pressure had discontinued, and in permitting the pressure to be resumed without notification, was plainly a question of fact for the jury, and not a question of law for the court.

The case of *Johnson v. Grays Harbor R. & Light Co.*, 142 Wash. 520, 253 Pac. 819, is upon different facts. There the cause was submitted to the jury and a verdict returned in favor of the defendant. That case is not authority which would support the contention that the trial court in the present case should have withdrawn the same from the jury because the evidence of negligence was not sufficient. The submission of the question to the jury was proper.

The next question is whether the jury having returned a verdict in favor of Hoit, discharges his principal, the appellant. The cases of *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649; *Sipes v. Puget Sound Elec. R.,* 54 Wash. 47, 102 Pac. 1057, and others cited by the appellant, support the rule that, where the action is against the master and a servant jointly to recover for damages, where the negligence of the servant is the gist of the cause of action, and the master could be rendered liable on the theory of *respondeat superior,* and the verdict is against the master but in favor of the servant, no judgment can be entered against the master because the verdict in favor of the servant exonerates him.

This rule is not applicable to the facts of this case. While Hoit was charged with negligence, it also appears from the facts that the jury had a right to find that Harris, who was Hoit's superior, was guilty of negligence in failing to instruct Hoit to notify all gas users and in permitting the gas pressure to be resumed without notice. Harris was not a party to the action, and, of course, no verdict was rendered in his favor. The liability of the gas company was not based solely upon the wrongful acts of Hoit; and, the liability not being so based, a finding in favor of Hoit did not prevent the rendition of a verdict against the appellant based on the acts of Harris shown to be wrongful and

for which the appellant is liable under the doctrine of *respondeat superior.*

In the case of *Curtis v. Puget Sound Bridge & Dredging Co.,* 133 Wash. 323, 233 Pac. 936, it was held that a verdict in favor of the servant did not discharge the master, for the latter was guilty of negligence irrespective of the acts of the servant. It was there said:

"The first of the reasons suggested is that the release of Case by the jury is, in law, a release of the appellant, and that therefore the motion for judgment notwithstanding the verdict should be granted. In *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, the rule was announced, which has been followed in some thirteen or fourteen cases since, that a judgment in favor of the servant, in an action to recover damages for a tort committed by the servant, is a bar to an action against the master to recover damages for the same tort of the servant, and where the servant and the master have been joined in actions of this nature a dismissal of the servant dismisses the master. With this rule of law there can be no quarrel, and were the record indisputably such as would justify the court or a jury in saying that the acts which are relied on as a basis of the respondents' cause of action were acts committed by Case as a servant or employee of the appellant, the argument of appellant would be conclusive. The record, however, discloses a dispute, and although it is true that the respondents drew their complaint on the theory that Case was the one who, as a representative of the appellant, was guilty of the negligent acts, the testimony introduced alters the situation, and it is upon the testimony in the case and not upon the allegations in the complaint that, under the rules of practice in this court, the issue must be determined. There was testimony, which the jury had a right to believe, that Case was, as described by one of appellant's witnesses, a fill superintendent only, and that he was under the supervision of other employees and officers of the appellant, and that the principle of *respondeat superior* is not conclusive in this action, and the jury had a right to believe that the appellant

was guilty of negligence independently of any negligence of Case, and under such conditions the release of the employee would not release the master. *Jones v. Seattle,* 51 Wash. 245, 98 Pac. 743; *O'Brien v. American Casualty Co.,* 58 Wash. 477, 109 Pac. 52; *Aldrich v. Inland Empire Tel. & Tel. Co.,* 62 Wash. 173, 113 Pac. 264; *Armack v. Great Northern R. Co.,* 126 Wash. 533, 219 Pac. 52.''

The present case falls within the rule of that case, and the verdict in favor of Hoit did not discharge the appellant.

The next question is whether the respondent was guilty of contributory negligence. But little attention need be given this question in this connection. It cannot be said, as a matter of law, that he was guilty of negligence in retiring with the windows and door of the apartment closed and the radiant fire going, with the temperature as low as it was. This was a question for the jury. Certainly, the respondent, as a matter of law, in the exercise of ordinary care and prudence for his own safety and welfare, was not required to anticipate that the appellant would fail, in case of a break in the pipe line supplying the city of Puyallup with gas, to notify him either of the break or that the pressure had been resumed.

It is next contended that the respondent's tubercular condition was produced by his living conditions and not by the gas poisoning. Upon this question the evidence of the expert witnesses, the doctors, is directly in conflict. One doctor called by the respondent testified as follows:

"Q. Now, assuming that Mr. Senske, prior to January, 1930, was a strong and healthy man weighing 215 lbs. and that he slept in the apartment on the morning of January 22, as you have heard him testify, with gas escaping from this gas heater, what would you say as to whether or not his present condition was caused by that inhalation of gas? A. Well, I would say

that the inhalation of the gas, carbon monoxide gas, had indirectly caused the tuberculosis. Q. What do you mean by indirectly? A. I mean it had broken down his vitality and through the way it acts in the blood and the way it acts on the tissues that it had lowered his vitality to the point of breaking down this old tuberculosis into an active case. Q. In your opinion—Is it your opinion that the inhalation of the carbon monoxide gas was the cause of active tubercular condition that you find? A. Yes, sir."

Another doctor called by the respondent testified:

"From Senske's testimony, I would be satisfied in my own mind that the activation of the tuberculous process was due to that inhalation of carbon monoxide gas. My professional opinion is that his present condition is due to the inhalation of carbon monoxide gas. THE COURT: Did I understand his condition, or aggravation of his condition? A. No, his present condition is tuberculous, present tuberculous condition. I would say he has chronic, fibroid, pulmonary tuberculosis. To effect a cure is a question of years. I could not be very definite about the time of that. I would recommend institutional treatments. I would not think the conditions under which Senske lived would have any tendency to produce any such condition as I found."

The doctors called by the appellant testified that the respondent's condition was caused by the conditions under which he lived, and was not produced by the inhalation of carbon monoxide gas on the morning of January 22nd. This presented purely a question of fact for the jury.

It is next contended that the verdict rests upon speculation and conjecture, and therefore cannot be sustained. But we need not pursue this inquiry further, because it is answered by what has already been said. It cannot be said that a verdict which rests upon the direct and positive testimony of two doctors

qualified to speak is based upon speculation and conjecture.

Some complaint is made of the ruling of the trial court in the rejection of evidence, but we find no error in this regard, and the ruling is not of sufficient consequence to justify a detailed discussion.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.