BENLEHR ET AL., APPELLANTS, *v.* SHELL OIL CO. ET AL.; LANDRUM OIL CO., INC., APPELLEE.

(No. 352—Decided December 20, 1978.)

*Mr. Nelson Lancione* and *Mr. J. D. Bryant,* for appellants.
*Messrs. Young & Alexander,* for appellee.

PALMER, P. J.  Plaintiffs sustained serious burns over a significant portion of their bodies in an explosion and fire occurring on the premises of an automobile service station in Wilmington, Ohio. The lawsuits which followed these injuries joined as defendants the individual lessee of the service station, one Harley Doss; the Shell Oil Company, whose products were sold at the station; and the appellee herein, Landrum Oil, Inc., the lessor of the service station premises and a distributor or jobber for the Shell Oil Company. Prior to trial, the Shell Oil Company settled its differences with the plaintiffs and was dismissed upon a covenant not to sue.

The cause proceeded to trial upon the question of liability only, the issue of damages having been earlier separated by order of the trial court, and resulted in a jury verdict against the individual Doss. The defendant, Landrum Oil, Inc. (Landrum), was, however, dismissed upon a motion at the conclusion of the plaintiff's case. This appeal followed with a single assignment of error, asserting that the trial court erred in sustaining the Civ. R. 50(A) motion of the defendant Landrum because, it is argued, reasonable minds could have differed upon the issue of Landrum's liability in negligently entrusting a dangerous instrumentality to an untrained and unskilled lessee.[1]

The evidence before the trial court at the conclusion of the plaintiff's case may be summarized as follows. The president of Landrum testified, as upon cross-examination, that his company was the distributor for Shell Oil Company in Highland and Clinton Counties, and that Landrum owned five service stations within the territory, including the Wilmington service station in question, which it had leased to various lessees over a ten year period. In 1973, the Wilmington station became vacant and Landrum negotiated with Harley Doss to operate the station as lessee.

Questioned as to an investigation into the experience and capacities of its prospective lessee, the president of Landrum stated that while "we normally check the appearance of a man and what his capabilities are," and that "I would ask if he had ever been a mechanic—if he knew anything," he did not recall asking these questions of Doss, or what his answers, if any, may have been. Reminded that Doss' background included work principally as a kitchen helper, the defendant's president was asked:

"Q. Let's assume for purposes of this question, Mr. McCoy, that your inquiry or background check would have revealed what I have just said, would you still have leased the station to Mr. Doss?

---

[1] It is unclear from the record whether the trial court concluded, in directing a verdict, that the evidence did not sustain negligent entrustment, or that the law of the state simply did not provide a remedy in negligence against a lessor out of possession and control for negligent entrustment. Both aspects of the problem are hereinafter discussed.

"A. That would be questionable, sir, at the present time—how far you can say whether a man is qualified, sir.

"Q. In other words, there is some question in your mind, that if you had the facts as I have related them to you, as to whether or not you would lease the station to Mr. Doss?

"A. It would be a question in anyone's mind on their qualifications—I do not recall exactly his qualifications, sir."

The witness stated that Shell Oil Co. conducted training programs for service station operators such as Doss, but that he did not require that Doss enroll in such programs. He issued no guidelines or instructions for the operation of the station, or the manner of conducting business, but an employee of Landrum periodically visited the premises to check the amount of gasoline used. No other recommendations or instructions in the usage of the premises were issued to lessees.

The lessee, Doss, testified that he had a ninth grade education, and that his prior work experience included "factory work" and "kitchen work," in which he ran a rough grinder and a dishwasher, respectively, and a short period behind the counter selling dairy products. He appears to have had limited experience in working on cars, and stated that he had never before worked at a service station.

Doss then testified as to the events preceding and following the explosion and fire which resulted in the injuries to plaintiffs. Doss and an employee of his had been working on an automobile inside the enclosed station premises. The automobile had apparently leaked oil, and Doss' employee filled a five gallon can with gasoline from a pump and broadcast it on the floor in order to cut and disperse the spilled oil. They had commenced to sweep the resultant liquid into a drain when the gasoline was ignited by the open gas flame of a hot water heater within the building, and a flash explosion and fire rapidly followed. Doss and his employee managed to extricate themselves moments before the explosion, but the two plaintiffs, who were inside the garage area,[2] were not so fortunate.

The final witness for plaintiffs was the chief of the Wilmington Fire Department, who responded to the disaster and

---

[2] One of the plaintiffs owned an automobile parked on the service station lot awaiting painting by Doss. The other plaintiff was an acquaintance of Doss and his sister, and his purpose for being in the station was not made clear, except that his presence was known and tolerated by Doss.

made an investigation of the circumstances thereafter. Much of his testimony corroborated the foregoing, but in addition—after being qualified as an expert therein by virtue of his experience and training both as a fireman and as the owner of a service station for about 30 years in the Wilmington area—he testified as to the extraordinarily explosive capabilities of gasoline, when mixed with oxygen.

"Q. Just tell us briefly in connection with its properties—for instance, whether or not it is dangerous—how it should be used and handled?

"A. It is very dangerous—in fact, it is more dangerous than dynamite. You can do things with gasoline one day and tried [*sic*] it the next and it will blow you up. So it is classified as more dangerous than dynamite.***"

The Chief stated that he would never recommend gasoline as a cleaning agent, but that if it is so utilized, it should only be used outside in order to minimize the danger of explosion and fire. He stated that nonflammable solvents were available to disperse oil and grease, but that Doss had purchased or used none of these products. He also testified that he had both owned and leased service stations himself, and had engaged employees, but that he would never turn a service station over to an individual without some supervision and instruction. He further stated that he had never used gasoline as a cleaning agent in any interior space because of its dangerous propensities.

Landrum defends the granting of the motion for a directed verdict by relying on the ancient but substantially unimpeached doctrine that a lessor not in possession and control[3] is not responsible for injuries resulting from conditions on the premises or acts of negligence committed thereon by his tenant or others. *Cooper* v. *Roose* (1949), 151 Ohio St. 316; *Ripple* v. *Mahoning National Bank* (1944), 143 Ohio St. 614; *Berkowitz* v. *Winston* (1934), 128 Ohio St. 611; *Riley* v. *Housing Authority* (1973), 36 Ohio App. 2d 44; 52 Corpus Juris Secundum 32, Landlord and Tenant, Section 417(3). While the doctrine is not without its critics, and not without some exceptions of recent origin (Prosser, Law of Torts 400, Section 62

---

[3] Plaintiffs make no issue of the existence of any significant possession or control by Landrum Oil Co., Inc., of or over the premises in question. The lease is a simple one-page document essentially establishing a rental based on gallonage used.

[4th ed. 1971]), the general rule remains as stated in 2 Restatement of Torts 2d 239, Section 355 (1965):

"Except as stated in §357 and 360-362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."

Somewhat more relaxed rules have been applied in the case of injuries to those outside the leased premises (*e.g.,* 2 Restatement of Torts 2d 283, Section 379A [1965] and comment *b* thereto), but the point is irrelevant to the instant inquiry. The theory of immunity from tort liability derives from the obvious analogy of a lease of land to a sale of land; the lessee, like the vendee, acquires an estate in the land, although for a term only, and becomes for that term the owner and occupier thereof, subject to all liabilities that attach to the possessor. *See, e.g., Artman* v. *Cities Service Oil Co.* (1960), 83 Ohio Law Abs. 123, for the traditional approach to the problem in a case with substantial factual similarities to the instant case, but where no issue was raised by the plaintiff that the lessor's negligence consisted in a want of due care in entrusting dangerous facilities to an unskilled tenant. The defendant, Landrum, vigorously urges this rule as dispositive.

The plaintiffs, on their part, recognizing the impediment offered by the foregoing, presented their case to the trial court as they argue here, on a theory of liability for negligent entrustment. We have accordingly been cited by plaintiffs to a variety of cases from various jurisdictions in which an employer has been held liable upon engaging an independent contractor with knowledge that the latter does not possess the requisite skill to perform the contracted work. *Covington and Cincinnati Bridge Co.* v. *Steinbrock & Patrick* (1899), 61 Ohio St. 215; 28 Ohio Jurisprudence 2d 357, Independent Contractors, Section 16; Annotation 8 A.L.R. 2d 267, and cases cited therein. The rule is particularly apt, argue plaintiffs, when, as here, the work to be performed by the contractor is intrinsically or inherently dangerous, *Pendergrass* v. *Lovelace* (1953), 57 N.M. 661, 262 P. 2d 231, or where the financial responsibility of the contractor is inadequate, *Majestic Realty Associates, Inc.,* v. *Toti Contracting Co.* (1959), 30 N.J. 425, 153 A. 2d 321.

6

Both exacerbating circumstances being present here,[4] say plaintiffs, the application of the rule should have been made by the trial court to the instant cause.

Both arguments, in our view, fall somewhat short of the mark. The question raised by the plaintiffs is *not,* as Landrum would have it, whether this jurisdiction will attribute to a lessor out of possession and control liability for negligent acts committed on the premises. Rather, it is whether there are activities or situations involving a risk to the public so material that the law will impose a duty on a landlord to exercise due care in placing the activity within the control of a tenant. On the other hand, neither is the question quite so obvious or simple that it can be solved by citation to independent contractor cases, as plaintiffs argue.

We readily agree with plaintiffs, however, on one aspect of this argument: that the subject matter of the lease between Landrum and Doss was one involving a use which may fairly be said to be either inherently dangerous, or possessed of dangerous potentialities. We so conclude based on precedent, *Simkins* v. *R. L. Morrison & Sons* (C.A. 5, 1939), 107 F. 2d 121; *Teasdale* v. *Beacon Oil Co.* (1929), 266 Mass. 25, 164 N.E. 612; *Robert R. Walker, Inc.,* v. *Burgdorf* (1951), 150 Tex. 603, 244 S.W. 2d 506; *Nick* v. *Standard Oil Co.* (1931), 183 Minn. 573, 237 N.W. 607, on the testimony of the chief of the Wilmington Fire Department concerning the explosive potential of gasoline, and upon common sense. The use of fire marked the emergence of modern man from his beginnings, as our ancestors were taught in the legends and tales common to most cultures, and most familiar to us in the Promethean myth. Its presence today in all of its forms wholly surrounds us. Nearly as ubiquitous is the presence of service stations as repositories of gasoline and petroleum products. Each such facility is a potential disaster area awaiting only the congruence of the two elements.

But we cannot similarly agree that the rule which requires an employer to exercise due care in the selection of an *independent contractor* is automatically transferable to a lessor in selecting a lessee. We are afforded no authority by plaintiffs in point, and have discovered none in this jurisdiction. The law of

[4] The record is silent, however, as to the capacity of the defendant Doss to respond to a judgment in damages.

negligence does not scatter its duties of care like seeds on the wind, indiscriminately or without compelling reason. Our task is to discover whether such reason may be found in the circumstances presented in the instant case. We believe that it may.

Thus, there is simply no case to be made consistent with reality as to why the law should not provide the public with a remedy against a landlord out of possession and control who rents a powder factory to a known pyromaniac. One response to this proposition might be that it presents a sympathetic case for legislation; of course it does, and many states have enacted legislation bearing on the issue. But we do not believe we are required to await the problematical results of such an effort, particularly where the common law furnishes established analogues and parallels to the principle sought to be established.

We believe such parallels may readily be found in at least two areas of law, *viz.,* the theory of negligent entrustment as applied to bailments and to sales. In *Elliott* v. *Harding* (1923), 107 Ohio St. 501, the defendant entrusted an automobile to his unskilled and inexperienced 14 year old son, who promptly became involved in an accident caused by his carelessness. Although declining to call an automobile a dangerous instrumentality, the court noted at page 505:

"The authorities are quite in harmony that if dangerous instrumentalities are intrusted to persons unskilled in their use, or unaccustomed to operate them, and the owner has knowledge of such incompetency, and the person so using such agency, by his negligent operation of the same, causes damage to the persons or property of others, the owner will be held responsible therefor."

It recognized, nevertheless, that an automobile is "an instrument of highly dangerous potentialities" (*Elliott, supra,* at 506), and that those who own and use them are held to a standard of reasonable care and caution to avoid injury to others. The rule is given in paragraphs one and three of the syllabus of *Elliott,* as follows:

"1. While an automobile is not a dangerous instrument *per se,* it may become such if operated by one who is unskilled in its use; and, where the owner intrusts such a machine to an inexperienced or incompetent person, liability for damages may arise."

"3. In such a case the liability of the owner would not rest upon ownership or agency, but upon the combined negligence of the owner and driver; negligence of the father in intrusting the machine to an incompetent driver, and negligence of the son in its operation."

The rule announced in this case has been followed by many others of similar import, and is now well established. 7 Ohio Jurisprudence 2d 148, Bailments, Section 41; 8 American Jurisprudence 2d 1146, Bailments, Section 260. Although finding its greatest use in automobile bailment cases, it is not necessarily limited to this area. *Cf. Hilleary* v. *Bromley* (1946), 146 Ohio St. 212, adopting the rule in 2 Restatement of Torts 1064, Section 392 (1934); 8 Corpus Juris Secundum 476, Bailments, Section 40, and cases cited thereunder.

A second area where the doctrine of negligent entrustment—or something close to it—has found currency is in sales law, where the vendor sells a firearm, explosive, or highly flammable substance to a child or incompetent. *Clark* v. *Ticehurst* (1954), 176 Kan. 544, 271 P. 2d 295; *Di Gironimo* v. *American Seed Co.* (E.D. Pa. 1951), 96 F. Supp. 795; Annotation 20 A.L.R. 2d 119. The question here is complicated by the existence in many jurisdictions of statutes conditioning the sale of such objects to minors, and, where the class asserting a right of protection is comprised of strangers to the sale, by the further question of forseeability by the vendor.

If a tendency or movement in the law may be discerned from these concededly exiguous sources, it would appear in the direction of embracing the theory of negligence articulated in 2 Restatement of Torts 2d 86, Section 302A (1965):

"An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person."

Also, see Section 302B, at page 88:

"An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

Illustration 6 under Section 302A, *supra,* is the *Elliott* v. *Harding, supra,* situation.

If a risk is unreasonable and the act therefore negligent where it is of such magnitude as to outweigh what the law regards as the utility of the act or the manner of doing the act (2 Restatement of Torts 2d 54, Section 291 [1965] ), then clearly the instant facts present a justiciable issue of negligence.

"It is fundamental that the standard of conduct which is the basis of the law of negligence is determined by balancing the risk, in the light of the social value of the interest threatened, and the probability and extent of the harm, against the value of the interest which the actor is seeking to protect, and the expedient of the course pursued." Prosser, Law of Torts 149, Section 31 (4th ed. 1971).[5] *See also* 2 Restatement of Torts 2d 54, Section 291 (1965).

The act of operating a gasoline service station obviously involves a substantial risk of harm to others; it is also a useful and, indeed, indispensable service. But the risk of entrusting its operation to an untrained or incompetent operator would seem to invoke a peril of a magnitude sufficient to charge the lessor with a duty of acting reasonably to protect others from harm.

To state the matter directly, we conclude that where a lessor seeks to lease property for a use which is inherently dangerous or has highly dangerous potentialities involving a substantial risk to the general public, and such danger or risk to the public is such that it may be foreseen by the lessor,[6] the lessor owes a duty of reasonable care in selecting and entrusting such property to a lessee. Where, as here, harm comes to a member of the public through the negligence of the lessee in the use of the leased premises, and where there is evidence before the court from which reasonable minds could

---

[5] Prosser cites Chief Judge Learned Hand in *United States* v. *Carroll Towing Co.* (C.A. 2, 1947), 159 F. 2d 169:

" 'Since there are occasions when every vessel will break away from her moorings, and, since, if she does, she becomes a menace to those about her, the owner's duty, as in other similar situations, to provide against resulting injuries is a function of three variables: (1) The probability that she will break away; (2) the gravity of the resulting injury, if she does; (3) the burden of adequate precautions. Possibly it serves to bring this notion into relief to state it in algebraic terms: if the probability be called P; the injury L; and burden B; liability depends upon whether B is less than L multiplied by P; *i.e.*, whether B is less than PL.' " Prosser, *supra*, at 149, note 11.

[6] *Teasdale* v. *Beacon Oil Co.* (1929), 266 Mass. 25, 164 N.E. 612; *Jackson* v. *Wisconsin Tel. Co.* (1894), 88 Wis. 243, 60 N.W. 430; *Kentucky Independent Oil Co.* v. *Schnitzler* (1925), 208 Ky. 507, 271 S.W. 570.

have concluded that the lessor realized or should have realized the risk of harm and, nevertheless, exercised less than reasonable care[7] in selecting or entrusting the lessee with the property, an issue of liability exists which should go to the jury under appropriate instructions.

Although other solutions to the problem posed by the instant case have been proposed, as in *McLaughlin* v. *Kelly* (1911), 230 Pa. 251, 79 A. 552, where the decision holding the lessor liable was grounded in public policy, or *Sutton* v. *Chevron Oil Co.* (1973), 85 N.M. 604, 514 P. 2d 1301, where oil companies were placed under a strict liability doctrine "because it is more able than the lessee to bear the costs of accidents or distribute the cost of liability insurance and protect the public from judgment proof lessees,"[8] we see no compelling reason to deny the application to the instant facts of reasonable and reasonably settled principles of negligence law. We therefore sustain the assignment of error.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

BLACK, J., concurs.
KEEFE, J., dissents.

KEEFE, J., dissenting:  I cannot agree with the reversal and remand. It seems to me that the trial judge decided correctly when he granted Landrum's motion for a directed verdict.

I find much reasonableness in my Brother Palmer's espousal of a rule that where a lessor seeks to lease property for a use which is inherently dangerous or has highly dangerous potentialities involving substantial risk to the general public and such danger or risk to the public is such that

---

[7] As to the standard of care in dealing with gasoline or other dangerous materials, *see Webb* v. *Wisconsin Southern Gas Co.* (1965), 27 Wis. 2d 343, 134 N.W. 2d 407; *Senske* v. *Washington Gas & Electric Co.* (1931), 165 Wash. 1, 4 P. 2d 523; *Applegate* v. *Portland Gas & Coke Co.* (1933), 142 Ore. 66, 18 P. 2d 211; *Comanche Duke Oil Co.* v. *Texas Pacific Coal & Oil Co.* (Tex. App. 1927), 298 S.W. 554; *Clark's Admr.* v. *Kentucky Utilities Co.* (1941), 289 Ky. 225, 158 S.W. 2d 134.

[8] *Id.,* at 1309. *See also* Annotation 52 A.L.R. 3d 121, 127; Nagel, *The Duty of a Landlord to Exercise Reasonable Care in the Selection and Retention of Tenants,* 30 Stan. L. Rev. 795 (1978).

it may be foreseen by the lessor, the lessor owes a duty of reasonable care in selecting and entrusting such property to a lessee. However, this rule seems to qualify what I believe to be the law in this state, namely, that a lessor not in possession and control is *not* responsible for injuries resulting from conditions on the premises or acts of negligence committed thereupon by his lessee or others, and I am at this time unprepared to agree to a qualification of the prevailing principle as I understand it. Although fully mindful of the dangerous potentialities of such businesses as service stations, it seems a hard and unwieldy burden to place upon a lessor the requirement that he or she entrust property only to safe lessees. I am greatly troubled by the means which lessors could reasonably employ to acquit themselves of such duty. In other words, one must query to what extent lessors must go to educate themselves before they could reasonably be said to be in a position to know whether they can with impunity entrust certain premises to certain prospective lessees. The problem of determining when to entrust and when not in specialized types of business seems substantial and unmanageable. Must an unsophisticated lessor, if unacquainted with the full arsenal of dangers of safety requirements of a prospective lessee's business, convene and compensate experts on the subject before entrusting the premises to the lessee? For dangerous businesses[9] involving a risk to the general public there are other more reasonable means to protect the public, such as licensing laws, other than saddling lessors with an impracticable duty of care in selecting and entrusting.

It is interesting to note in the matter before us for review, that the lessee operated the leased service station *safely* for a year before the subject accident occurred.

As indicated, I would affirm the judgment below in which Landrum's (the lessor's) motion for a directed verdict was granted.

---

[9] Examples of businesses which might be inherently dangerous or have highly dangerous potentialities would seem to be, in addition to service stations: welding companies, hardware stores which stock inflammable liquids, paint stores, dry cleaning establishments, automobile body repairing and painting enterprises, auto dealers with gasoline pumps, eating facilities where fire and electricity form essential parts of the business operation and many others which could be catalogued.