[No. 10628.   *En Banc.*   April 11, 1913.]

COLISEUM INVESTMENT COMPANY, *Respondent,* v. KING
COUNTY et al., *Appellants.*[1]

ACTIONS—FORM—LEGAL OR EQUITABLE—RELIEF.   In an action for
a conversion, commenced as an equitable proceeding, relief at law
will not be denied because of the form of the pleadings.

COUNTIES—LIABILITY FOR CONVERSION—DEFENSES.   In an action
for the conversion by a county of improvements on leased property,
which were to be appraised and paid for, it is immaterial whether
the county commissioners declined to arbitrate, or whether they had
not the power, since the county was liable for the value of the prop-
erty converted in any event.

LANDLORD AND TENANT—IMPROVEMENTS BY TENANT—COMPENSATION
—CONVERSION.   Under a lease of county property giving the tenant
a right to remove improvements if the lease is terminated on 60
days' notice, and providing for a two years renewal if the property
be not required for immediate use by the county, in which case the
improvements were to be appraised by arbitrators and paid for at
the appraised value, the tenant is entitled, upon holding over during
the two-year renewal period without notice of termination having
been given, to recover the appraised value of the improvements at
that time, converted by the county upon refusing to arbitrate the ap-
praisal or to allow the improvements to be removed.

SAME—IMPROVEMENTS BY TENANT—COMPENSATION—CONVERSION—
MEASURE OF DAMAGES.   Where a lease provided that improvements
by the tenant should be appraised and paid for, and the landlord con-
verted the same at the termination of the lease, and thereafter
leased the same and collected rents, the measure of damages is the
value of the improvements for rental purposes at the termination
of the lease, and the use to which they were put may be considered;
but it is error to give judgment for the rents collected.

Appeal from a judgment of the superior court for King
county, Gay, J., entered April 30, 1912, upon findings in
favor of the plaintiff, in an action for rents collected and
equitable relief.  Reversed.

*John F. Murphy* and *Robert H. Evans,* for appellants.

*Kerr & McCord* and *Maurice D. Leehey,* for respondent.

[1]Reported in 131 Pac. 245.

CHADWICK, J.—On the 2d day of April, 1906, the county of King leased to one George B. Lamping, in consideration of the sum of $500, payable in advance, certain property owned by it, to wit, lots 1, 4, 5 and 8, in block 33, of C. D. Boren's addition to the city of Seattle, for a term of two years from and after the first day of April, 1906. The lease provided:

"It is further mutually agreed and understood by the parties hereto that if, at the end of the said period of two years, the use of said premises shall not be required for immediate use by the said party of the first part for county purposes, the said party of the second part is to have the option and right of renewing or extending said lease on the same terms until such time as said premises shall be required for immediate use by said party of the first part for such county purposes: *Provided,* however, that said renewal or extension shall in no event extend beyond the 1st day of April, 1911. Provided, however, that if this lease shall have been extended so as to continue to the first day of April, 1911, and the party of the first part should determine to further lease said premises, and does not lease to the party of the second part, then the party of the second part, or his heirs, assigns, executors, or administrators, in consideration of the improvements that may have been placed on said premises, shall have the right to have said improvements appraised by three disinterested appraisers, one to be selected by each of the parties hereto, and the two so selected to choose a third, the party of the first part, shall thereupon be required to immediately pay to the party of the second part, value of said improvements as appraised. Said appraisement to be conclusive and binding upon parties hereto. *Provided* that, if at any time subsequent to said first day of April, 1908, said premises should be required for immediate use by the party of the first part for county purposes, the board of county commissioners shall have the right and power, by first giving sixty days' notice of its intention to do so, to fully terminate and end said lease at any time so designated by such notice, and when said lease has been terminated in the way herein mentioned, the party of the second part shall, within sixty days thereafterwards, remove all buildings, structures, property and debris of every character placed thereon by him, and, if not

so removed within the time aforesaid, the same shall be for-feited to the said party of the first part."

Lamping entered into possession of the property, and shortly thereafter assigned his interest in the lease to the Coliseum Investment Company. That company made valu-able improvements, and beginning with October, 1906, en-joyed a large rent return, the gross figures being $2,350 per month. No notice was given by the county of its intention to cancel the lease at the end of the second year period men-tioned therein, and the investment company held over until the 30th day of March, 1911, when, without giving it any opportunity to remove its buildings, the county served notice upon it that its lease was terminated, and also served notice upon all its tenants that they must thereafter attorn to the county. The notice given to the investment company was in the form of a resolution adopted on the 29th day of March, 1911, and is in form as follows:

"Whereas, the lease made by King county on the 2nd day of April, 1906, with George B. Lamping, to lots 1, 4, 5, and 8, in block 33, C. D. Boren's Addition to the city of Seattle, expires by limitation on April 1, 1911; and whereas, the board has considered the proposition of again leasing said premises, and has concluded that the best interests of the county do not justify the further leasing of said property; now there-fore, be it resolved; that the board of county commissioners express at this time its intention not to again lease said prop-erty, and that notice of the intention of the board be given to the assignees of said George B. Lamping, lessee. Dated this 29th day of March, 1911.

| Attest: | David McKinzie, |
|---|---|
| Otto A. Case, Clerk, | M. L. Hamilton, |
| By N. M. Wardall, Deputy. | A. L. Rutherford." |

Mr. Lamping, who was a witness at the trial and who was interested in the Coliseum Investment Company, testified that he called upon the commissioners prior to the 1st day of April, 1911, endeavoring to ascertain their then intentions, and to have an appraisement of the buildings if they were not going to continue the lease. This is denied by the commis-

sioners, but it is not denied that at some time, probably in the month of April, a request for an arbitration and appraisement was made. At about the same time, the commissioners were informed that the Coliseum Investment Company intended to remove the buildings and were informed by the commissioners, who in all things have acted under the advice of the prosecuting attorney's office, that the county did not admit the ownership of the buildings to be in the Coliseum Investment Company and would, if any attempt was made to remove the buildings, have the sheriff stop the work. The county has since that time leased the buildings and has collected approximately $30,000 in rents. This action was brought by the Coliseum Investment Company, alleging the facts as we have briefly detailed them, and grounding their action upon an allegation that the county intended to convert the improvements to its own use and to continue leasing the property to the tenants of the investment company indefinitely. It asks that the county and its officers be restrained from interfering with the plaintiff in the removal of the buildings, that a receiver be appointed, and that a judgment be rendered for the amount of rents collected during the time the buildings have been detained and used by the county. A trial was had and the court concluded as a matter of law that the plaintiff was entitled to remain in the possession of the premises and to collect the rents until the value of the buildings could be fixed by a board of arbitration, and the amount so fixed paid to the investment company. The court further concluded that the county had no legal right or claim to the improvements as of date April 1, 1911. A decree was accordingly entered requiring the county, after reserving $500 per month rent, to pay over the balance of all rentals collected by it to the investment company. The case is brought here on the appeal of the county.

It is first contended that plaintiff has no standing in equity. While the suit has been prosecuted as an equitable proceeding, the decree of the court is in effect a judgment at law, and it

would serve no end to turn the respondent out of court when
the right of the case can be determined and without doing
violence to either party. The case is, after all, one of conver-
sion, and if this court can direct a judgment at law, it will
not deny relief because of the form of the pleadings. This
is not denied by counsel. It is said in their brief:

"Plaintiff could have brought suit to recover compensa-
tion for said building; in other words, by trial of said action
in a court before a jury. The plaintiff would receive the
same measure of compensation that would have been granted
at the hands of a board of appraisers, or at least the right
of compensation would have been fully protected."

Counsel insists, however, that the board of county commis-
sioners had no authority to delegate away the discretionary
power and duty which the law imposes on them by the ap-
pointment of a board of appraisers to determine the reason-
able market value of the buildings. As we view the case, it is
unnecessary to pass upon this question. People may, either
in their own behalf or as representatives, agree to arbitrate;
if they do not, the law will provide a remedy. In our judg-
ment, it is immaterial whether the county commissioners have
declined to arbitrate or whether they have not the power. It
is enough that they have refused, and having refused, the re-
spondent is entitled to pursue the usual remedy; that is, a
suit for the value of its property.

The only question left in this case is whether the lease ex-
pired on April 1, 1911, and carried with it all the right and
interest of the respondent in the buildings. The appellants
admit that "respondent could have been compelled under the
terms of the lease to have removed the buildings at any time
between the 2d day of April, 1908, and the 1st day of April,
1911, had the county by proper notice required such action
to be taken." The commissioners, who were witnesses, testi-
fied very frankly that, for a long time prior to the 1st day
of April, they had intended to terminate the lease and take
over the buildings. Simple justice would demand, if this

case was one between individuals, that the notice referred to in the quotation just made should have been given. We know of no rule that will exempt the county from the exercise of good faith in its dealings. It might allow the lease to expire without a notice, but it is bound by its contract. It is provided:

"That if the lease shall have been extended so as to continue to the 1st day of April, 1911, and the party of the first part shall determine to further lease said premises, and does not lease to the party of the second part, then the party of the second part or his heirs, assigns, etc. in consideration of improvements that may have been placed on said premises, shall have the right to have said improvements appraised," ctc.

It is clear that it was not intended by anybody when the contract was drawn that the county should take over the buildings without compensation or opportunity to remove them. The parties were dealing at that time in good faith one with the other, and it was intended that Mr. Lamping and his successors would be entitled, (1) to a certain lease until April 1, 1908; (2) a possible lease until April 1, 1911, with the right of removal of the buildings if the county desired the immediate use of the property for county purposes; (3) the value of the buildings in the event of a continued leasing. The spirit of the contract is that, unless the property is required for immediate county use and is leased to any one other than the respondent, the county will pay for that which it takes. In the light of the contract, the county cannot be heard to say that it did not take possession of the property with the intention of leasing it, for it is leasing it. Respondent is entitled to compensation for the buildings which the county has converted. Appellants cite many cases holding that the right of removal must be exercised while the tenant is in possession, and insist that the possession of the buildings was voluntarily surrendered. We do not so read the record. It is true that the respondent obeyed the order of the county commissioners. They did not proceed to demolish the

buildings when told that they would be stopped by the strong arm of the law. The time has passed when a man's legal rights are to be based upon a show of violence. There is a growing tendency on the part of the courts to put no penalty upon gentlemanly conduct. *Northern Pac. R. Co. v. Wadekamper*, 70 Wash. 392, 126 Pac. 909.

Neither is there any merit in the contention of appellants that the respondent's measure of damages depends, not upon the right of removal of the improvements, but upon the right to the possession of the premises. The cases cited to sustain this proposition are not in point, for the reason that it is competent for parties to contract a measure of damages, and they have done so in this case.

The judgment of the court is erroneous in so far as it directs the commissioners to pay over the rents collected to the respondent. The measure of damages is the value of the buildings as of date April 1, 1911. In considering such value, it is proper to take into consideration the use to which the buildings had been put and are being put, the time they have been used, and the time they may be used in the future.

Inasmuch as the county has refused to arbitrate, either wilfully or because it has not the power, the case will be remanded with instructions to the lower court to direct the framing of an issue, and to call a jury to determine the value of the buildings, not for wreckage purposes, as suggested by counsel for appellants, but in view of the uses to which the county has put the property. That this issue may be more clearly presented, the pleadings may be amended.

Reversed, with instructions to proceed as directed in this opinion. The parties will pay their own costs on appeal.

All concur.