[Nos. 8379, 8381.   Department One.   January 2, 1914.]

MANLEY ETTOR *et al.*, *Appellants*, v. THE CITY OF TACOMA
*et al.*, *Respondents*.

EDWIN HOWARD *et al.*, *Appellants*, v. THE CITY OF TACOMA
*et al.*, *Respondents*.[1]

APPEAL—DECISION—REMAND—PROCEEDINGS AFTER REMAND FROM
UNITED STATES SUPREME COURT.  Where actions were dismissed, upon
granting a nonsuit and sustaining a demurrer to the complaint,
upon the single ground of the validity and constitutionality of a
statute, and the judgments were affirmed on appeal without deciding
any other question, the reversal of that decision by the Supreme
Court of the United States, with remand for further proceedings not
inconsistent therewith, does not preclude a new trial upon proffered
defenses other than those passed upon on the appeals, where the
decision of the Supreme Court of the United States did not pass on
such defenses.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—DAMAGES TO ABUTTERS
—LIABILITY OF CONTRACTOR.  A railroad company, grading a city
street, in consideration of the vacation of certain streets, in accord-
ance with plans furnished and under the direction of the city,
stands in the situation of a compensated contractor, and is not lia-
ble to abutting owners for damages on account of the change in
grade, where there was no claim that the work was negligently done
or not in accordance with the plans.

HIGHWAYS—CONTRACT FOR GRADING COUNTY ROAD—LIABILITY FOR
CHANGE OF GRADE—RIGHTS OF ABUTTERS—CONSTRUCTION OF CONTRACT.
A contract whereby a railroad company, standing in the situation of
a compensated contractor, agreed with a county to grade a street,
in accordance with plans furnished by and under the direction of
the county, "at its own expense and without cost or charges" to the
county, contemplates only the expenses, costs, and charges of making
the grade conform to the plans and specifications; and hence does
not include the damages to abutting owners by reason of the change
of grade, after the street had been included within city limits and
the contract taken over or assumed by the city; especially since, at
the time the contract was entered into, the land was outside the city
limits and the parties contracted with reference to the rule in this
state that the county was not liable to abutters for damages from a
change of grade.

[1]Reported in 137 Pac. 820.

MUNICIPAL CORPORATIONS — ANNEXATION OF TERRITORY — EFFECT. The annexation of territory to a city *ipso facto* extends the authority of the city over the territory, under Rem. & Bal. Code, § 7449, providing that it shall thereupon be subject to all laws of the city.

SAME—ANNEXATION OF TERRITORY—EXTINGUISHMENT OF UNEXECUTED CONTRACTS. Upon the annexation of territory to a city, a contract by the county commissioners for the grading of a street in the territory annexed, not then executed, is extinguished where its execution would tend to defeat the rights of the city, and where the contract did not come within some guarantee of the constitution, unless it was acquiesced in and acted upon by the city.

SAME—PUBLIC IMPROVEMENTS—CONTRACTS—RATIFICATION—ACQUIESCENCE IN CONTRACT ON ANNEXATION OF TERRITORY. Upon the annexation of territory to a city, the city may acquiesce in an unexecuted contract made by the county commissioners for the grading of a street, where it was not *ultra vires*, and might have been made by the city; and such a contract will be deemed ratified by the city and the improvement adopted as a proper municipal improvement, although not recognized by an affirmative act by the city council, where the work was allowed to go on under the supervision of the city engineer, and with knowledge of the commissioner of public works and of the street committee of the city council, without anything being done to stop it.

COSTS—ON APPEAL—TAXATION. On the reversal by the supreme court of the United States of a decision of the supreme court of the state, the clerk of this court may refuse to tax as costs items of expenditure in the preparation of the appeal to the Federal court that were paid without the intervention of this court or the clerk's office, and which could not be checked by reference to our statutes or practice, and which appear to be taxable, if at all, in the Federal court.

On remittitur from the Supreme Court of the United States, commanding further proceedings, on appeals from judgments of the superior court for Pierce county, Chapman, J., entered April 8, and June 11, 1909, dismissing actions for damages for the original grading of a street. Reversed.

*Boyle, Warburton & Brockway*, for appellants.

*T. L. Stiles* and *Frank M. Carnahan*, for respondent City of Tacoma.

*Geo. W. Korte, H. S. Griggs*, and *H. H. Field*, for respondent Chicago, Milwaukee & St. Paul R. Co.

CHADWICK, J.—The judgment of this court, reported in *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, and *Howard v. Tacoma,* 57 Wash. 698, 106 Pac. 481, 107 Pac. 1064, was reversed by the Supreme Court of the United States. A remittitur has come down in each case commanding further proceedings not inconsistent with the decision of that court. *Ettor v. Tacoma,* 228 U. S. 148.

The defendant Chicago, Milwaukee & St. Paul Railway Company, of Washington, and the City of Tacoma were sued by plaintiffs as joint tort feasors. The liability of the railway company to respond in damages was not discussed by this court. It was argued in the briefs filed by the railway company in the Supreme Court of the United States, but that court did not pass upon the question. That court went no further in its opinion than to decide the particular question upon which our former opinions turn; that is, the validity and constitutionality of the act of the legislature of this state. Laws 1909, p. 151, § 1 (Rem. & Bal. Code, § 7815; P. C. 171 § 125). The railway company and the city filed separate answers, denying liability on grounds other than those based upon the statute of 1909. The parties defendant appeared separately, and filed briefs in this court. Their proffered defenses have never been passed upon. This being made to appear by motion, we believe that the defendants are entitled to have the questions raised by them passed upon, and that our consideration of them will not be a proceeding inconsistent with the decision of the Supreme Court of the United States.

In the year 1906, the railway company was seeking entrance into, and terminal facilities at, the city of Tacoma. It had acquired certain property for terminal uses. The property was at that time platted ground, and a part of what was known as Indian addition to the city of Tacoma. It was not embraced within the corporate limits of the city. The railway company entered into a contract with the county commissioners of Pierce county wherein it agreed that, in consid-

eration of the vacation of a part of "M?" and "N" streets, in the plat of Indian addition, it would, at its own cost, grade a roadway thirty feet wide in the center of 26th street, in Indian addition. The work of grading was to be done under plans to be approved by the county engineer. These plans were prepared and submitted to the county engineer for approval. Pending the contract and the offer of the plans, a movement to bring Indian addition within the corporate limits of the city was put under way, and the county engineer suggested to the engineer of the railway company that he take the plans to the city engineer for his approval. This was done. The city engineer made some slight suggestions. He drew some marks upon the plat to indicate his ideas of what the grade should be.

In the spring of 1908, the railway company graded 26th street. The city engineer was upon or about the work from time to time. He had a copy of the contract with the county commissioners. The mayor and the commissioner of public works were aware that the work was going on, and upon one occasion, if not more, the commissioner made some suggestion with reference thereto. Some of the city councilmen, probably a minority of them, visited the work and were aware of the fact that it was being done by the railway company. The members of the committee on streets were also upon the ground, and had notice that the work was being done. In the progress of the work, a water main was broken. This was repaired by the city under the direction of the city engineer. The work was completed to the satisfaction of the city engineer, but was never formally accepted by the city. Thereafter, plaintiffs brought an action to recover damages under § 47, ch. 84, Laws 1893, p. 207, and § 48, ch. 153, Laws 1907, p. 336.

Upon this state of facts, we are of the opinion that the railway company is not liable to answer in damages. The theory upon which it is sought to hold the railway company is that the city, being a tort feasor and having assumed to do or

having permitted the work to be done under circumstances that would estop it to deny its responsibility and the agency of the railway company, its agent is bound to answer with the principal. It will be borne in mind that the railway company occupies no part of the street in front of appellants' property. It has done no more than improve an unimproved street according to plans approved by and under the direction of the city engineer. We do not understand that it is charged that the work was negligently done. This court is committed to the doctrine that, where work is done by a contractor for the city in accordance with plans furnished by the city under its direction, and it is not made to appear that the work has been negligently done, the contractor is not liable. *Kaler v. Puget Sound Bridge & Dredging Co.*, 72 Wash. 497, 130 Pac. 894; *Casassa v. Seattle*, 66 Wash. 146, 119 Pac. 13; *Potter v. Spokane*, 63 Wash. 267, 115 Pac. 176; *Quinn v. Peterson & Co.*, 69 Wash. 207, 124 Pac. 502; *Stern v. Spokane*, 73 Wash. 118, 131 Pac. 476. In principle, the railway company is in the same situation as a compensated contractor. It had no interest other than to do the work and to receive its compensation, which it did in property instead of money.

We notice, however, that it is said by the plaintiffs in their brief filed in the Supreme Court of the United States, that:

"When the city, by its engineer, ordered the work to be done in a certain manner, and vacated 'M' and 'N' streets, and the railway company accepted such vacation and built the grade as directed by the city, they impliedly agreed that their rights and liabilities the one to the other, should be as set out in the order of the board. One of these provisions was that the grading of the street should be at the railway company's 'own expense, and without cost or charges to or upon the said county of Pierce.' Under the statute governing the city, which by the mutual acceptance of the parties succeeded in the contract to the county of Pierce, a part of this expense so contracted to be paid was payment of compensation to the property owners. The railway company has, therefore, by proceeding as though the original order of vacation

were a contract between itself and the city, agreed to pay plaintiffs in error for the injury which they would sustain. The promise was obviously not only for the benefit of the city, but for the benefit of the property owners, and they may rely upon it in an action to recover such damages. This is not only the universal rule in the United States, but is made positive by the provisions of the Washington Code (Rem. & Bal. § 179.) that 'every action shall be prosecuted in the name of the real party in interest,' except as otherwise specially provided."

We are unable to follow the reasoning of counsel. The words "own expense, and without cost or charges to or upon the said county of Pierce," cannot be given the meaning contended for for two reasons: first, it is obvious that the expenses, costs, and charges contemplated was the cost of making the grade conform to the plans and specifications. The words "costs or charges" add nothing to the word "expense." The word "expense" is used to define the promise of the railroad company, and the words "cost or charges" are used by the other contracting party to disclaim any liability to those who might do the work. Furthermore, at the time the contract was made, the payment of damages as for compensation for property taken or damaged could not have been within the contemplation of the parties. It has rarely, if ever, been held, and certainly not in this state, that a property owner abutting a public highway owned by the county and subject to the jurisdiction of the county commissioners, can recover damages for an improvement of the highway or for a change in its grade. At the time the words relied on were written, the county had jurisdiction over the street that was thereafter improved, and the law will presume that the parties contracted with reference to the facts and the law as they existed at the time.

It is earnestly contended by the city attorney that the city is not liable for the reason that the work was done under a contract made with the county which was lawful at the time it was made; that the plans were never formally adopted; that

the approval of the city engineer of the plat was no more or less than a suggestion which in itself was so slight that it would not bind the city; that the superintendency of the city engineer was unauthorized; that the work was never formally accepted, and that a knowledge on the part of a minority of the councilmen would not amount to a ratification or work an estoppel on the part of the city.

No cases have been cited by counsel, nor have we been able to find any, covering the exact state of facts now before us. In consequence, we are put to the stress of searching out such fundamental principles as, in our judgment, are controlling. It is settled in this period of the law's evolution that, when territory is annexed or brought into a city, the authority of the city is *ipso facto* extended over the new territory, and it becomes subject to the control and supervision of the municipal authority. Outside territory when annexed "shall thereupon become a part of such city and subject to all its laws and ordinances then and thereafter in force." Rem. & Bal. Code, § 7449 (P. C. 77 § 129) ; *Peterson v. Tacoma R. & Power Co.*, 60 Wash. 406, 111 Pac. 338, 140 Am. St. 936; *Railroad Co. v. Defiance*, 52 Ohio St. 262, 40 N. E. 89; *St. Louis Gaslight Co. v. St. Louis*, 46 Mo. 121; *Trustees of Schools v. Board of School Inspection*, 214 Ill. 30, 73 N. E. 412.

It would necessarily follow that contracts, theretofore entered into by the legislative or administrative body having jurisdiction over the new territory, and not then executed, or if of such character that their execution would be inconsistent with or tend to defeat the contracts, rights, powers, and duties of the annexing municipality, and not coming within some guarantee of the constitution, should be held to be extinguished by the act of annexation. The case of *Peterson* is controlling in principle. We there held that, where the limits of a city were extended so as to take in a part of a street railway then being operated through the city and upon a public road beyond the city limits under franchise from the

county commissioners, the franchise was abrogated by the annexation and that the railway company was bound to carry passengers within the limits of the city as extended for one fare of five cents, as then provided in its contract with the city and as evidenced by an ordinance.

The city was not bound to act upon or acquiesce in a contract made by the county with the railway company; but the contract that was made was a lawful one, and might have been entered into by the city on its own account. This court has frequently held that, where a contract is not unlawful and for that reason *ultra vires*, the city will be bound by the same rules which govern individuals in dealing one with another. *State ex rel. Maddaugh v. Ritter*, 74 Wash. 649, 134 Pac. 492; *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226; *Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999; *Criswell v. Directors School Dist. No. 24*, 34 Wash. 420, 75 Pac. 984; *Coliseum Inv. Co. v. King County*, 72 Wash. 687, 131 Pac. 245; *Turner Inv. Co. v. Seattle*, 70 Wash. 201, 126 Pac. 426, 41 L. R. A. (N. S.) 781.

There is much confusion in the books in applying the principles of ratification and estoppel to municipal corporations. We confess our confusion in determining upon which ground we should rest our decision. We believe that it may be rested upon either ground, but more securely upon the ground of ratification. That an unauthorized contract may be ratified by a city will not be denied, and needs no citation of authority. The only question for us is whether the conduct of the city has been such as to make a ratification. We think there was sufficient notice to the various administrative officers of the city to make it chargeable with knowledge of the fact that the work was going on, it having extended, as we now remember, over a period of two or three months. The contract with the county was a matter of public record. The city might have disclaimed the contract and denied the right of the railway company to proceed. A city is not bound to accept the encumbrance of an executory contract when an-

nexing territory, but it may do so. For the purposes of this argument, we will assume, as the city attorney insists the fact to be, that the city council did not, by any affirmative act, ratify the contract under which the work was done. But it does not follow that the lack of an affirmative act will exempt the city. It may be bound by its inaction. It may be bound by a vote of its council, by the acceptance of benefits, by paying for services in connection with the work, or by bringing an action at law upon the contract, or by mere silence. McQuillin, Municipal Corporations, § 1258. But it does not follow that the city can escape the payment of damages, if any there be. The contract made by the county measures the relative rights of the city and the railway company. Not having arrested the work pending an assessment of damages, the city must be held to have adopted it as a proper municipal improvement and cannot now assert that it was not done under its authority. *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820. Under the law, as the Supreme Court of the United States has declared it to be at the time the work was done, the city must meet its liability.

In taxing the costs on appeal to the Supreme Court of the United States, the clerk of this court disallowed certain items that were expended in the preparation of the appeals. There is no statute covering the taxation of costs in a case like this, and we think the clerk did not err when he refused to tax items of expenditure as costs that were paid without the intervention of this court or of his office and which cannot be checked by reference to our statutes or to our practice in cases appealed to this court. If the items complained of are properly taxable, it would seem that they should have been so taxed in the other court. The order taxing costs is approved.

The *Ettor* case comes here from a judgment of nonsuit and dismissal. It will be remanded for a new trial.

The *Howard* case comes here from a judgment of dismissal entered upon a refusal to plead further after the entry of an

order sustaining a demurrer to the complaint. It will be remanded with instructions to overrule the demurrer and for further proceedings.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.