## Rich & Company Appeal

*Irwin I. Tryon*, for appellant.

*Anne X. Alpern*, City Solicitor, and *J. Howard Devlin*, assistant city solicitor, for appellee.

BROWN, J., December 17, 1952. — This matter is before the court on the appeal of Rich & Company, Inc., from the decision of the Board of Adjustment of the City of Pittsburgh denying to it a certificate of occupancy; and raises a novel legal question accord-ing to our search not previously decided by the appellate courts of this Commonwealth.

(Our reference hereinafter to "board" designates the Board of Adjustment of the City of Pittsburgh; to "city", the City of Pittsburgh; and to "township", the Township of Baldwin.)

From the admitted facts, stipulation of counsel and findings of fact by the board, it appears:

1. That Rich & Company, Inc., a Pennsylvania corporation, on September 20, 1950, became the owner of a certain piece of real estate then located in the township; and that the corporation from the date of the purchase used the property for the storage of pipes, trucks, bulldozers and ditch-digging machines. No buildings are erected on the property.

2. On March 31, 1951, a portion of the township was annexed to the city by proceedings in the Court of Quarter Sessions of Allegheny County, at November sessions, 1950, misc. dkt., no. 3. The property of Rich & Company, Inc., was a part of the annexed property, and was at that time zoned by the township as residential. It is admitted that the corporation was not using

this property for residential purposes, and that under the township zoning ordinance the corporation's use was not a nonconforming use.

3. On May 4, 1951, appellant corporation applied to the city's department of public safety, bureau of building inspection, for a certificate of occupancy for the purpose of occupying or using its property for the storing of pipe, trucks, bulldozers and ditch-digging machines thereon, and the city, through its department of public safety bureau of building inspection, on this same day refused to grant the occupancy permit, for the following reasons: "Not permitted in a residential district as zoned by Baldwin Township. This property, which was annexed to the City of Pittsburgh by ordinance no. 263, June 3, 1950, *has not as yet been zoned by the City of Pittsburgh.*"

4. On May 4, 1951, appellant appealed to the board, which held a hearing on May 12, 1951, and on May 19, 1951, denied the appeal, giving as its reason that the use appellant desired was not permissible in the township; that the township ordinance was still in effect and continued to be in effect until the city zoned the property.

5. Appellant filed its appeal, and this court on May 7, 1952, took additional testimony. The city rested its case upon the record made before the board. Appellant called as its witnesses two employes of the city, one being the superintendent of the bureau of building inspection in the department of public safety, and the other, the zoning clerk of the bureau of building inspection; both of whom testified that the official zone map of the city did not show that the property of the appellant had been zoned under any of the classifications designated in the zoning ordinance of the city, approved by its council on July 30, 1923, or any of the amendments enacted subsequently thereto.

The Act of March 31, 1927, P. L. 98, 53 PS §9183, authorizing zoning in cities of the second class (Pittsburgh is a city of the second class) provides, inter alia:

"Section 2. Districts. For any or all of said purposes, the Council may, by ordinance, divide the city into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this act and, within such districts, they may regulate and restrict the erection, construction, reconstruction, alteration, repair, use or occupancy of buildings, structures or land . . . Section 4. City Planning Commission. It shall be the duty of the city planning commission of such city to recommend the boundaries of the various districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public meetings thereon before submitting its final reports and council shall not hold its public meetings or take action until it has received the final report of such commission. Section 5. Method of Procedure. The council of such city shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and, from time to time, amended, supplemented or changed. However no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such city."

6. The zoning ordinance of the city, by article III, entitled "Use District Classifications and Regulations" divides the city of Pittsburgh into 11 use districts, ranging from "Heavy Industrial District" to "A", "A-B", "B" and "C" residence districts.

Section 4 of the city's ordinance further provides:

"The location and boundaries of said Use Districts are hereby established as shown on the Zone Map which accompanies this ordinance and is hereby declared to be a part hereof."

7. It is admitted by the decision of the board and the evidence submitted at the hearing before this court as aforesaid, that at the time the hearing was held before the board the city had not, through its planning commission or council, designated the annexed property as being embraced within any of the 11 use districts under article III of the zoning ordinance hereinbefore mentioned.

Section 46 of the zoning ordinance of the city, entitled "Occupancy Permits" provides inter alia:

"No building, structure or land shall be used or changed in use until a certificate of occupancy and compliance shall have been issued by the Superintendent of the Bureau of Building Inspection stating that the building, structure or land and the proposed use of the same *complies with the provisions of this ordinance. A like certificate shall be issued for the purpose of maintaining,* renewing, changing, or extending a non-conforming use."

The question before us is: Is the decision of the Board of Adjustment of the City of Pittsburgh free of a mistake of law in its holding that the Baldwin Township ordinance carried over into the City of Pittsburgh until such time as the city zoned the property of appellant; and that since appellant's use of the property was not a nonconforming use under the Baldwin Township ordinance it was not entitled to a use occupancy permit under the zoning laws of the City of Pittsburgh?

Appellant's brief states at its conclusion the following:

"We respectfully submit that on May 4, 1952, the City of Pittsburgh had not zoned the appellant's property, had not classified it either as residential, commercial, industrial, or any of the eleven (11) classifications used by the city, and that the appellant was entitled to an occupancy permit as authorized by section 46 of the city's zoning ordinance."

In support of its contention that the occupancy permit was properly refused by the board, the city solicitor, in the reply brief states three novel conclusions of law:

(a) ". . . It is impossible for a city such as the City of Pittsburgh to immediately zone the annexed property upon the signing of the order of court." (b) "The contention of the City of Pittsburgh is that the Baldwin Township Ordinance, No. 382, approved September 23, 1942, remained in effect until the City of Pittsburgh zoned the property that was annexed", and on the last page of said brief: (c) "The law contemplates that in an annexation the existing ordinances of the annexed property remain in effect until such enabling ordinances are passed by the annexing body."

As we stated in the beginning, the legal questions here involved are novel, and could be analyzed as follows:

I. Did the township ordinance follow the annexed property so that it remained effective after the property was annexed to the city?

II. Did the zoning ordinance of the city attach to this property at the time of the annexation, whereby appellant's property came within the classification of one of the city's use districts?

III. Did the laws of the city ipso facto cover this property ex proprio vigore?

As our answer to question I above, it is generally held that in an annexation proceedings the laws and

ordinances (with certain exceptions not involved in any way in this matter) of the territory from which the property is taken, are extinguished: 62 C. J. S. 183, §73, and McQuillin on Municipal Corporations, vol. 2, §7.46, p. 388 states:

"When territory has been lawfully annexed, the new area becomes, ipso facto, a part of the municipality for all urban purposes, and such new area becomes at once subject to municipal jurisdiction and may be governed under the powers of the municipal corporation, in like manner as the original limits were governed, prior to change, in accordance of course, with the provisions of annexation requiring variation, if any, in government."

The principle enunciated by the learned authority on municipal corporations is supported by Western Gas Co. v. Bremerton, 21 Wash. 2d 907, 153 P. 2d 846, wherein it was held:

"Where new territory is brought within a city, its ordinances are immediately in effect in the new as well as in the old territory, without the necessity of express legislation to that effect. . . . The city's right to govern the new territory is not based upon a contractual relationship with persons owning property therein, but is an attribute of governmental power granted to the municipality by the state"; and the following, in McGurn v. Board of Education, 133 Ill. 122, page 131:

"The annexation of territory to a municipality does not carry with it the necessity of formulating a code of municipal law for the government of the territory annexed. By becoming a part of the municipality, it is *ipso facto* brought under and made subject to all the laws by which the municipality itself is governed. Those laws extend over and apply to it *ex proprio vigore*, and do not require express legislative action to give them such application. Here, the instant the territory in question became annexed to Chicago, it

became a constituent part of the city, and from that instant became subject to the same laws, the same municipal organization and the same polity which the statutes in force had already provided for the government of the city and its institutions"; quoted with approval in City of Highland Park v. Calder, 269 Ill. App. 255; also Boise City v. Better Homes, 72 Idaho 441, 243 P. 2d 303.

In Poor District Case No. 2, 329 Pa. 410, 415, our learned Supreme Court, quoting with approval the Petition of East Fruitvale Sanitary District, 158 Cal. 453, 457, 111 Pac. 368, which concerned the abolition of a sanitary district, held:

" 'It is generally held that where one municipal corporation is annexed to another the annexing city takes over the functions of the annexed municipality, and the latter by virtue of the annexation is extinguished and its property, powers and duties are vested in the corporation of which it has become a part.' "

If this be true of the annexation of an entire municipality, it is perfectly logical to say that the same principle of law applies where only a part of the municipality is annexed.

It is our conclusion that the zoning ordinance of the township as to the annexed area was extinguished upon final order of the court of quarter sessions; and that simultaneously the ordinances of the city attached *ex proprio vigore*, so that the property of appellant was brought within the orbit of the zoning power of the city. In Ettor et al. v. Tacoma et al., 77 Wash. 267, 273, 137 Pac. 820 is found the following:

"It is elementary that upon the annexation of territory to a municipality, in the absence of special provision to the contrary, it becomes subject to the control of the municipal authorities precisely as territory already within the limits."

This is what we mean by the expression that the new property came within the orbit of the zoning power of the city, and that it became subject to its control. This power of control may be conceived as being inherent in sovereignty, but does not, in the instant case, zone appellant's property into a district classification or use district, without positive action by the city as established by the State enabling zoning act and the city's zoning ordinance.

We now come to question II, as follows: Did the zoning ordinance of the city, which was passed in 1923, attach so that the property in question became zoned under one of its use districts. We think not, and before entering upon our discussion, state what is now a well-recognized legal principle. Zoning ordinances are in derogation of the common law, and must be strictly construed: Lord Appeal, 368 Pa. 121; Lukens v. Ridley Township Zoning Board of Adjustment, 367 Pa. 608, 612.

The zoning ordinance of the city provides that council may divide the city into districts; the city planning commission shall recommend the boundaries of the various districts; and council shall hold hearings. This procedure is mandatory: Kline et al. v. Harrisburg et al., 362 Pa. 438. It has been the recognized practice under the Zoning Ordinance of the City of Pittsburgh that the designation of new territory to be zoned is done so by proper amendment to the zoning ordinance. While the original zoning ordinance of 1923 attached to this newly acquired property simultaneously with the annexation proceedings, an amendment to the zoning ordinance[1] designating the classi-

---

1. No contention is made that the annexed property had been the subject of an amendment, and the zoning ordinance of the city submitted into evidence showed that since the enactment of its zoning ordinance 21 amendments have been passed, and 13 parcels of

fication of the newly annexed property, would be prospective and not retroactive—there being no provision in the original zoning ordinance or in the act of assembly indicating the passage of retroactive legislation. Our authority on this subject is Ayars v. Wyoming Valley Homeopathic Hospital et al., 274 Pa. 309, as follows:

". . . whether the amendment is effective from the date of the original act or from its own date . . . the weight of authorities seems to be that the latter is the better construction . . ."; and also, the following from the dissenting opinion of the late Chief Justice Maxey in Spain's Estate, 327 Pa. 226, 235:

"No law, whether expressed in the form of an amendment or a statute, has a retroactive effect unless it expressly purports to do so." Likewise, in Bowie Coal Company Petition, 368 Pa. 102, 106, 107, it was held: " 'It is a sound and well-settled principle of statutory construction that no law shall be construed to be retroactive unless clearly and manifestly so intended.' "

If the decision of the board, holding that the Zoning Ordinance of Baldwin Township governed this property until such time as the city zoned the same, the practical aspects of the matter would be fraught with many, many diverse and conflicting propositions—for example, under what law would suits for violation of the provisions of the ordinance be brought? Would the procedure be the one followed by the Township Enabling Act of the General Assembly, or the Enabling Act provided for cities of the second class? Strict compliance would not be demanded by the law

---

land, formerly parts of other municipalities, were listed on the supplement to the zone map, and properly classified into use districts. Such amendments have been held to be valid and within the power of the city, and not in violation of contractual rights of property owners: Gratton et al. v. Conte et al., 364 Pa. 578.

if the zoning statutes were so drawn that within themselves they allowed for conjecture and procedural difficulties that give rise to conflicting and contradictory supervision, control and enforcement. These and many other legal situations would cause a multiplicity of procedural difficulties that were never contemplated under zoning acts, for strict compliance with the statutory provisions of zoning ordinances is mandatory. Taylor v. Moore, 303 Pa. 469, 473:

"That act provides that in all cases where a remedy or method of procedure is provided or a duty enjoined by any act of assembly, the directions of such act shall be strictly pursued, and we have held that such remedy or procedure is exclusive."

In the case at bar no amendment was passed designating the location and boundaries of use districts in which appellant's property is situated. Appellant's property is not shown on any of the zone maps of the city.

In Fierst et al. v. William Penn Memorial Corporation et al., 311 Pa. 263, it was held that the publication of municipal ordinances is mandatory, and until complied with as the law directs, such ordinances are ineffective. In this case the zoning ordinance of appellant, Township of Wilkins, Allegheny County, was not published in accordance with the act of assembly, although the appellees had knowledge of the provisions of the zoning ordinance. The court said:

"Knowledge of the existence of an invalid ordinance cannot cure the defect. Failure to follow the express provisions of the law as to publication made the ordinance of no effect. . . . Until there was a valid ordinance forbidding it, defendants could use their land for cemetery purposes. That they knew such a measure was pending can make no difference so far as their rights are concerned unless it ripened into a lawful enactment."

In Coyne v. Prichard et al., 272 Pa. 424, it was held that the authorities of a city of the second class have no right to refuse a permit for the construction of a garage because of the disapproval of the location by the board of city planning, where it appears that such board had not as yet made its final report as to the areas in which various trades and business could be carried on, and no hearing thereon was held before the city council as required by the Act of June 21, 1919, P. L. 570, the court saying, at p. 427:

"By the Act of March 7, 1901 (P. L. 20), and supplements of June 10, 1911 (P. L. 872) and June 21, 1919 (P. L. 570), an additional executive department for cities of the second class was provided, to be known as the department of city planning, and to be in charge of a city planning commission. This board has the power to regulate and restrict the areas in which trades and business of various kinds can be carried on. The appointees in Pittsburgh have undertaken the work of districting the city, *but as yet no recommendations have been made to the council.* In view of the express provision of the Act of 1919, that 'cities shall not determine the boundaries of any district, nor impose any regulations or restrictions until after the final report of the city planning commission, and after hearing before council', any action by the board limiting the areas in which certain structures shall be built, is without effect . . ."

The present enabling act governing cities of the second class is similar to the provisions of the Act of June 21, 1919, P. L. 570, insofar as procedure is concerned.

The contention of the city that the board acted within its rights in that it is impossible to immediately zone the annexed property upon the signing of the order of court, may or may not be a correct statement of a physical fact. It is wholly immaterial here, for

until an amendment to the zoning ordinance of the city is duly passed as provided for in its zoning ordinance, designating the use district in which this property was to be situated, this property was unzoned, and being unzoned, appellant had the right to use his property without regard to prohibited or permissive uses designated in the original zoning ordinance.

Having decided that the township zoning ordinance ceased to exist upon final order of the quarter sessions court annexing this property, and that the zoning ordinance of the city could not zone the property of appellant without an amendment designating the district in which this property should be classified, the remaining question III becomes academic, except for the fact that it should be noted we are not here dealing with general powers of sovereignty such as police, fire, sanitary, health measures, etc. We are dealing with zoning ordinances, that are in derogation of the common law, and they must be "strictly construed and pursued."

Counsel for the city argues that it would be absurd and against public policy to hold that the zoning laws do not contemplate that in an annexation the existing ordinances of the annexed property remain in effect until such enabling ordinances are passed by the annexing body. The authority necessary to sustain this contention is not cited, nor have we found any statute holding the same. The city intimates in its brief that by applying for an occupancy permit appellant has brought itself under the power of the city's zoning ordinance. This argument is just as fallacious as the attempt of the board to exercise its judicial discretion upon the ordinance of another municipality. Neither principle is supported, directly or indirectly, by statutory authority. Unless the board acted within its statutory authority, its decision is null and void and of no effect whatsoever. Lukens v. Ridley Twp. Zoning Board, supra, p. 612:

". . . the only authority the Board (referring to the Zoning Board of Adjustment of Ridley Twp., Delaware County) has is statutory; that the statute, being in derogation of property rights which have been recognized for centuries, must be strictly construed and pursued"; also Kline v. Harrisburg, supra (p. 450): " 'It is a fundamental principle that the authority of a municipal body is to be found in the statute which confers it, and must be exercised strictly in the manner therein provided.' "

It could well be that our subject matter, namely, the status of property as it leaves one municipality and becomes annexed to another, has not been the subject of litigation sufficiently important for the legislature to supply adequate law to safeguard and prevent a property use from becoming a nonconforming use while the property is in flight from one municipality to another; and that we are here met with what may be considered in law an "omission" in the statute. If this be so, the omission could only be supplied by the legislature: Commonwealth ex rel. Cartwright v. Cartwright et al., 350 Pa. 638. This omission to provide for a temporary or interim ordinance was passed upon by our appellate court in Kline v. Harrisburg, supra, p. 452:

"If the legislature wishes to authorize the enactment of a 'temporary' or 'interim' ordinance to maintain the status quo it can so provide by legislation with proper safeguards. . . . 'Interim' zoning ordinances, although never before known to the courts of this State, have been before the courts of other States. In an annotation of 136 A. L. R. 850 it is stated: 'Temporary zoning or "stopgap" ordinances have, quite logically it would seem, been held invalid where they were not enacted in compliance with constitutional or statutory provisions authorizing municapilities to enact zoning ordinances'."

Furthermore, the language of the statute giving the power to zone property is plain and unambiguous, and conveys a clear and definite meaning. Our Statutory Construction Act (46 PS 551) contains, inter alia:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

Therefore, the "intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde": Farmers Kissinger Market House Company, Inc., v. Reading et al., 310 Pa. 493, 498.

We come to the following conclusions of law:

1. The zoning ordinance of the township did not carry over so as to retain its zoning control over appellant's property after the annexation proceedings which placed appellant's property within the jurisdictional limits of the City of Pittsburgh.

2. The zoning ordinance of the city, at the time appellant applied for a permit, had not classified appellant's property into a use district.

3. Appellant's property, not having been classified in any of the use districts as provided for by the act of assembly and the ordinance of the city, was not zoned and his occupancy of the same was not subject to the control of the board.

4. Appellant's property, not having been zoned by the city, no occupancy permit was necessary.[2]

---

2. The question of whether an occupancy permit is necessary where the property is not zoned was not raised by appellant or appellee. However, we feel that since the provision dealing with the occupancy permit is a part of the zoning ordinance, we should state what we believe to be the law, and that is, where the property is not zoned, no occupancy permit to continue a nonconforming use is necessary, for the reason that a nonconforming use presumes a valid zoning ordinance.

This matter is before us as on certiorari, and we cannot modify the board's decision unless there has been a manifest and flagrant abuse of discretion (Berberian Zoning Appeal, 351 Pa. 475, 478); or on a mistake of law (Veltri Zoning Case, 355 Pa. 135); and the appellee (property owner) is entitled to a judicially exercised discretion on granting or refusal of his application: Lindquist Appeal, 364 Pa. 561, 564.

If, as in the case at bar the board based its findings on erroneous conclusions of law, the issue has not been determined by judicial discretion, notwithstanding the fact that by our substitution of proper conclusions of law we may reach the same conclusion the board reached. Here, the decision of the board is a proper one, but its application of the law was erroneous.

Summarizing, therefore, we hold that until such time as the city classifies appellant's property by the procedure outlined in the Enabling Act of the General Assembly, and its ordinance made pursuant thereto, the use of appellant's property as existed at the time these proceedings were instituted was not subject to the control of the zoning laws of the township nor of the city, and no occupancy permit was necessary.