[No. 37638. Department Two. December 16, 1965.]

ROBERT L. EDWARDS et al., *Appellants*, v. THE CITY OF RENTON, *Respondent.**

*Reported in 409 P.2d 153.

*Roberts, Shefelman, Lawrence, Gay & Moch,* for appellants.

*Brightman, Holm, Bereiter & Stone,* for respondent.

HAMILTON, J.—Plaintiffs initiated this suit against the City of Renton, a municipality of the second class, seeking recovery of the amount of $18,200 expended by plaintiffs for the installation of an intersectional traffic control signal. The trial court rendered judgment against the city in the sum of $12,132. Plaintiffs appeal. We reverse the judgment and remand for the introduction of further evidence.

Briefly, the salient facts are as follows: In 1959 and the early part of 1960, plaintiffs planned and commenced construction of a shopping center in the city of Renton. Access to and from the shopping center was to be by way of a city street intersecting Sunset Boulevard, a primary state highway, at a point where the boulevard was intersected by two other city streets. The State Highway Commission recommended and directed the installation of an appropriate traffic control signal at the intersection. The city recognized the need, and planning was commenced by the street and alley committee of the city council, which was in turn implemented by the city engineer. The city engineer contacted an electrical contractor, who had previously performed like services for the city, and an appropriate traffic

signal for the complex intersection was designed. The design was accepted by the street and alley committee and approved by the State Highway Department. Funds, however, had not been appropriated in the 1960 city budget for the installation of such a signal. In the meantime, plaintiffs' shopping center was nearing completion, with an opening date scheduled in March, 1960. Discussions ensued between plaintiffs and representatives of the city. As a consequence, on January 26, 1960, the street and alley committee recommended and the city council adopted the following resolution:

"Item No. 4 of the Street and Alley Committee report was then read by the City Clerk in regard to the installation of a traffic signal at Renton Shopping Center access road connection to Sunset Boulevard, said installation cost estimated at $17,500.00. The majority report of the committee recommended the installation at city expense with initial cost to be paid by Renton Shopping Center under an agreement wherein Renton Shopping Center will be reimbursed from funds budgeted in 1961. Discussion followed and it was agreed that this installation would alleviate the problem of egress from Harlington Hill as well as providing a by-pass for 3rd and Rainier Avenues."

Plaintiffs and the city engineer thereafter contacted the electrical contractor who had designed the signal. Pursuant to their request, and plaintiffs' assurance that they would pay the cost of installation, the contractor installed the signal before the March opening date of plaintiffs' shopping center. The cost of the signal and its installation was $18,200, including sales tax, which amount plaintiffs paid to the contractor. The installation was accepted by the city and integrated into its over-all traffic control system.

No bids for the design, manufacture, and installation of the signal were called for.

The city council, in making up the city's 1961 budget, appropriated funds for the purpose of reimbursing plaintiffs. A question thereafter arose as to the propriety of the contemplated reimbursement. When plaintiffs demanded repayment, the city refused and this suit followed.

The trial court concluded that the failure to call for bids and the failure to budget funds for the installation of the signal during 1960, the year the obligation was incurred, contravened RCW 35.23.352 and RCW 35.33.120, respectively, and rendered any agreement by the city to reimburse plaintiffs invalid and unenforceable. The trial court further concluded that, since the city had accepted the traffic signal and derived and retained the traffic control benefits thereof, plaintiffs were, upon equitable principles, entitled to recover the reasonable value of the benefits flowing to the city from the improvement. Finding that the fair and reasonable *value of the signal* and its installation was $18,200, the trial court determined that the *value of the benefits* flowing to the city was $12,132 and entered judgment in that amount.

On appeal, plaintiffs challenge the trial court's conclusions as to the validity of the reimbursement agreement and the measure of recovery applied. In short, plaintiffs contend that the city's agreement to repay them for the cost of installing the signal was simply a financial arrangement to expedite a necessary improvement; that such an arrangement does not contravene either the bid statute or the budget law; and that, in any event, plaintiffs were entitled under the circumstances to recover the reasonable *value of the signal* as contrasted to the reasonable *value of the benefits* flowing to the city from the signal.

We find no merit in plaintiffs' contention that they had a valid and enforceable contract with the city for repayment of the funds advanced.

Stripped to the bare bones, the transaction between plaintiffs and the City of Renton amounted to a borrowing of funds by the city for the installation of an improvement for which moneys had not been regularly appropriated.

Municipal corporations do not possess inherent power to borrow money. Authority to do so must be found in appropriate legislative provisions. Plaintiffs have, in the instant case, pointed to no statutory authority permitting a city of the second class to borrow money in such a fashion as here attempted, and we have found none. Power to do

so should not and will not be inferred or implied from a general statutory authority permitting municipalities to enter into contracts or to incur indebtedness. 15 McQuillin, Municipal Corporations § 39.07 (3d ed. 1950); 2 Antieau, Muncipal Corporation Law § 15.00 (1965). Though the purpose for which the funds were to be expended can be characterized as infra vires, the manner in which the funds were obtained was ultra vires, and the purported repayment agreement was accordingly void.

Even if the foregoing were not true, it can hardly be gainsaid that the "financial arrangement" here undertaken contravenes the purpose, intent and spirit of the pertinent municipal budget and bid statutes.[1]

▋ The purposes, generally, of statutory municipal budgeting requirements are to inculcate sound business principles and practices into the municipal economy, with particular reference to avoidance of waste, extravagance, and ill-considered expenditures, and to give the members of the tax paying public a better understanding of the financial affairs of the municipality and the anticipated disposition of public moneys. 15 McQuillin, Municipal Corporations § 39.39, at 125 (3d ed. 1950); 2 Antieau, Municipal Corporation Law § 15.31, at 453 (1965).

▋ And, the objects of statutory bidding requirements in connection with the letting of municipal contracts are to prevent fraud, collusion, favoritism, and improvidence in the administration of public business, as well as to insure that the municipality receives the best work or supplies at the most reasonable prices practicable. 10 McQuillin, Municipal Corporations § 29.29 (3d ed. 1950); 1 Antieau, Municipal Corporation Law § 10.11, at 688 (1965).

It should be axiomatic that plans, schemes, or devices

---

[1]"The expenditures as classified and itemized in the final budget shall constitute the city's appropriations for the ensuing fiscal year. Every officer and employee of the city shall be limited in the making of expenditures and incurring of liabilities to the amounts of the detailed appropriation items or classes, or to any amounts of appropriations which may be lawfully carried forward from prior fiscal years pursuant to RCW 35.33.150. · . . .

which thwart or circumvent the wholesome objects and purposes of such statutory provisions are invalid.

We turn now to the second issue presented by this appeal, that is, the extent, if any, of plaintiffs' right to recover the moneys or benefits advanced. A solution to this issue is complicated by the fact that, though the city had power to otherwise lawfully contract for the installation of the traffic signal, the particular financial arrangement with plaintiffs was ultra vires and installation of the traffic signal was carried out in violation of the budget and bid statutes. Thus, any recovery allowed plaintiffs cannot rest on the void and unenforceable contract; it must rest, if at all, upon a theory of quasi-contract or unjust enrichment.

There is some division and conflict of authority on the question of whether and when a recovery may be had against a municipality for money, goods, or services furnished to and retained by a municipality under an ultra vires contract. The greater weight of authority would appear to deny recovery, particularly where the contract involved is clearly beyond the scope of the municipal powers, is prohibited by constitutional or statutory provisions, or is contrary to public policy. 84 A.L.R. 936; 110 A.L.R. 153; 154 A.L.R. 351; 10 McQuillin, Municipal Corporations

"Liabilities incurred by any officer or employee of the city in excess of any budget appropriation shall not be a liability of the city. The clerk shall issue no warrant and the city commission, council or mayor shall approve no claim for an expenditure in excess of any individual budget appropriation except upon an order of a court of competent jurisdiction or for emergencies as provided in this chapter." RCW 35.33-.120.

"Any city or town of the second, third or fourth class may construct any public work or improvement by contract or day labor without calling for bids therefor whenever the estimated cost of such work or improvement, including cost of materials, supplies and equipment will not exceed the sum of five thousand dollars. Whenever the cost of such public work or improvement, including materials, supplies and equipment, will exceed five thousand dollars, the same shall be done by contract after a call for bids which shall be awarded to the lowest responsible bidder. Notice of the call for bids shall be given by posting notice thereof in a public place in the city or town and by publication in the official newspaper once each week for two consecutive weeks before the date fixed for opening the bids. . . ." RCW 35.23.352.

§ 29.111 (3d ed. 1950); 1 Antieau, Municipal Corporation Law § 10.03 (1965). There is, however, respectable authority cited in the foregoing annotations and texts which permit a recovery where the public improvement furnished to and retained by the municipality is within the scope of its authority to provide, although the contract by which the benefit was supplied is ultra vires yet not *malum in se, malum prohibitum,* or manifestly violative of public policy.

A review of our own cases satisfies us that we fall into the latter category. In *Abrams v. Seattle,* 173 Wash. 495, 23 P.2d 869 (1933), an action brought to enjoin the City of Seattle from making certain payments in favor of private entrepreneurs who had advanced money, labor, and material for the construction of an electrical substation on city owned property under an ultra vires lease arrangement, we expressed our view as follows, at 500:

> Conceding that the lease was void, still the municipality may not escape payment of the reasonable value of what it actually received as a result of the enterprise of the lessee. It did have the power to erect a substation on the property. It could have let a contract for that purpose which would have been valid and binding. Had it done so, even though such contract had been void for want of regularity in any particular (such as failing to advertise for bids), still the city would have been required to pay the reasonable value of the building, although no recovery could have been had on the contract. *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, 114 Pac. 457; *Mallory v. Olympia,* 83 Wash. 499, 145 Pac. 627. In the latter case, the court says:
>
> " . . . .
>
> "This court has endeavored to hold municipalities to the same standard of right and wrong that the law imposes upon individuals. *Franklin County v. Carstens,* 68 Wash. 176, 122 Pac. 999; *Coliseum Inv. Co. v. King County,* 72 Wash. 687, 131 Pac. 245; *State ex rel. Maddaugh v. Ritter,* 74 Wash. 649, 134 Pac. 492; *Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820. In *Green v. Okanogan County,* 60 Wash. 309, 111 Pac. 226, it was sought to enjoin the execution of a contract on the ground that it had not been let in accordance with the requirements of the statute. The court found that the controlling stat-

utes were in fact violated and that the contract was void. Certainly a contract substantially performed, although held to be abandoned, stands upon no lower plane than a void contract. Yet, notwithstanding, we said:

" 'This court has adopted the more equitable doctrine of allowing the parties, where the contract if entered into in conformity with the statutes would not have been unlawful, to retain from the moneys received by them a sum equivalent to the reasonable value of the property the county acquires and retains in virtue of the execution of the void contract. . . . So in this case, since the county has accepted and made use of the bridge, it is liable to the builders for its reasonable value.' "

Since the city is attempting to pay only for what it had the power to obligate itself to pay, we think the rule of the above cases applicable here. Other cases applying the rule are: *Besoloff v. Whatcom County,* 133 Wash. 109, 233 Pac. 284; *Strong & MacDonald v. King County,* 147 Wash. 678, 267 Pac. 436; *O'Connor v. Murray,* 152 Wash. 519, 278 Pac. 176.

In the instant case, the City of Renton could have, by appropriate action, lawfully and regularly installed the traffic control device, albeit not as expeditiously as it was installed under the arrangement with plaintiffs. It chose not to do so, but, instead, entered into the ultra vires agreement, most likely at the behest of plaintiffs, which, in turn, resulted in a violation of the budget and bid statutes. On the other hand, plaintiffs can hardly be characterized as innocent victims of the municipality's restricted contractual powers, for it is commonly recognized that one dealing with a municipality is chargeable with knowledge of the extent of the municipality's authority. Be this as it may, however, the traffic signal has in fact been installed; it has been accepted by the city and integrated into its traffic control system; the traffic safety factors inherent in the control of the complex intersection involved have redounded to the benefit of the motoring public; and the city council has, by including an appropriate item in the 1961 budget, indicated the city's willingness to reimburse plaintiffs to the extent lawfully authorized. Aside from the fact that plaintiffs were desirous of having the traffic signal installed in

time for the opening of their shopping center, we find no evidence of bad faith, fraud, or collusion involved in the transaction, and the trial court found none.

 Under the circumstances outlined, we are satisfied that the approach adopted in the *Abrams* case, *supra,* is apropos. By this approach, plaintiffs would be entitled to recover from the City of Renton the reasonable value of the traffic signal, as opposed to the trial court's determination that their recovery should be limited to the reasonable value of the traffic control benefits which the trial court conceived to have been derived by the city from the installation.

In so holding, we recognize, as heretofore indicated, that there is ample authority from other jurisdictions which would deny any recovery to plaintiffs under the circumstances here outlined, *e.g., Town of Worland v. Odell & Johnson,* 79 Wyo. 1, 329 P.2d 797 (1958); and that still other jurisdictions would limit any recovery to the value of the actual benefit conferred, as distinguished from the reasonable value of the improvement supplied, *e.g., Luther v. Wheeler,* 73 S.C. 83, 52 S.E. 874, 4 L.R.A. (n.s.) 746 (1905). In applying the approach of the *Abrams* case, *supra,* to the instant case, we do so with the understanding that the transaction involved is devoid of any bad faith, fraud, or collusion and that "financial arrangements" such as here evidenced are not usually indulged in by political subdivisions of the state. Should the contrary ever appear, it could well be that the dictates of public policy would require a more stringent approach.

We are not, however, satisfied with the evidentiary posture of this case as it relates to the issue of the reasonable value of the traffic signal. The cause was submitted to the trial court by stipulation of the parties with the only evidence bearing upon the issue of reasonable value being the deposition of the city engineer who testified that, in his opinion, the reasonable value of the signal was the cost thereof. Such a procedure lends itself too readily to abuse under the circumstances prevailing in a case such as this. It leaves the trial court without the benefit of a firsthand

evaluation of the attitude, demeanor, and conduct of a principal witness, and completely shorn of the in-court testimony of any disinterested witnesses that could and should be called upon to give the trial court a basis upon which to make a truly objective determination of the issue before it. In short, such a procedure literally forces the trial court into the acceptance of a figure which the parties, under their ultra vires arrangement, adopted as the measure of reimbursement for the improvement. This, in turn, virtually deprives the municipality's taxpayers of any safeguards arising out of limitations upon the municipality's borrowing powers, the municipal budgeting and bidding statutes, and the independent judgment of the trial court.

The permissible recovery in a case such as this, i.e., the reasonable value of the traffic signal and its installation, is not measured by the amount actually paid for the improvement. Rather, the recovery should approximate as closely as possible the result which would have been obtained had the budget and bid statutes been properly utilized; provided, of course, that the amount of recovery so determined does not exceed the amount actually paid.

The judgment of the trial court limiting plaintiffs recovery to the value of benefits is reversed. The cause is remanded to the trial court for the introduction of such further evidence as may be presented by the parties, or be directed by the trial court, upon the issue of the reasonable value of the traffic signal and its installation as of March, 1960. Since the amount of ultimate recovery is unliquidated, interest thereupon will commence to run from the date of entry of final judgment.

Plaintiffs shall recover costs of their appeal.

ROSELLINI, C. J., HILL, FINLEY, and WEAVER, JJ., concur.