**ARTMAN, Plaintiff-Appellant, v. CITIES SERVICE OIL COMPANY, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24975. Decided February 11, 1960.

124

A. H. Dudnik, for plaintiff-appellant.
Crossen & Chamberlin, for defendant-appellee.

(DOYLE, PJ, HUNSICKER, J, of the Ninth District, GRIFFITH, J, of the Seventh District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, PJ.

This case was commenced in the Court of Common Pleas of Cuyahoga County by Richard W. Artman, a minor, by and through his mother and guardian.

It was directed against the Cities Service Oil Company, the lessor of a gasoline station, in which an explosion and fire occurred, causing hurt to the plaintiff. Damages in money for personal injury were sought upon trial.

The plaintiff, an eighteen year old boy at the time of his injury, had been employed by the lessor's tenant, and was generally familiar with the operation of the busines, the layout of the premises, and its facilities. He testified that on the day of the explosion, although not then working, he had gone to the station to find out the amount of a bill that he owed the proprietor, and to ask permission to wash his car with the station equipment without charge to him.

The evidence tends to prove that gasoline, which apparently contained water, had been pumped into the automobiles of several customers of the station. These cars were later returned for examination and inspection when they failed to properly function. An employee of the lessee drained the gasoline tanks of the cars, and, in doing so, allowed the water and gasoline mixture to drain onto the floor of the "lube room" of the station, and from there into a drain trap in the floor. While this operation was taking place, a hot water heater, with an open flame, located in a room adjacent to the lubricating room, was in operation. This appliance, with its open flame about 12 inches above the floor, was approximately ten feet distant from the draining gasoline. While the draining operation was in progress, the explosion and fire occurred, and the plaintiff was severely burned.

Negligence proximately causing the plaintiff's injuries was alleged against the lessor and supplier of gasoline to the lessee as follows:

"1. In that it furnished a garage for use in the servicing of motor vehicles which contained a direct-fire heat-generating apparatus located less than 8 feet above the floor and specifically a direct-fired hot water heater located on the floor of its lubricating room.

"2. In that it furnished premium gasoline for sale to the public generally which was impregnated with water, making the same unsuitable for use as a motor vehicle fuel, although it knew that said premium gas would be sold for such purpose.

"3. In that it furnished a lubricating room which was not reasonably safe for the draining of petroleum products, and more specifically gasoline from the tanks of motor vehicles, when it knew, or should have known, that its lubrication room would be used for said purpose.

"4. In that it failed to test or otherwise inspect its premium gasoline prior to offering the same for sale and thereby discover and correct the defect in said premium gasoline, which contained water in such quantities as to make it unsuitable for the purpose for which it was furnished."

At the conclusion of the evidence, the court, upon motion, directed a verdict for the defendant, and judgment was entered thereon; and this appeal stems therefrom.

It perhaps is proper here to observe that a claim against the tenant had been settled for an amount over six thousand dollars, and a covenant not to sue the tenant was duly executed.

Cities Service Oil Company, the lessor, was itself a lessee of the property. However, "the rule is well settled that a lessee of premises, having the entire control thereof, is, so far as third persons are concerned, the owner. Midland Oil Co. v. Thigpen (C. C. A. 8), 4 F. 2d 85, 53 A. L. R. 311, writ of error dismissed, 273 U. S. 658, 71 L. Ed. 826, 47 S. Ct. 343; Simms v. Kennedy, 74 Fla. 411, 76 So. 739, L. R. A. 1918C 297; 32 American Jurisprudence, 695, Section 817." Kauffman v. First-Central Trust Co., Trustee, 151 Oh St 298, at p. 305. See also: DiRenzo v. Cavalier, Jr., 101 Oh Ap 227, at p. 230, affirmed 165 Oh St 386.

We therefore will treat, for the purpose of this case, Cities Service Oil Company as the landlord and lessor of the premises here involved.

The author of this opinion, in DiRenzo v. Cavalier, Jr., 101 Oh Ap 227, supra, affirmed 165 Oh St 386, stated that "the traditional formula used in this state for many years, applicable to persons injured on leased premises," appears in Burdick v. Cheadle, 26 Oh St 393. It is to the effect that a landlord, out of possession, owes no legal duty in failing to make premises safe and secure as a place of resort for guests or customers of a tenant, even where knowing that the premises were intended to be used for specific purposes which might cause injury to the tenant's patrons or guests. Paramount in the many cases following this doctrine is the question: Has the landlord retained the right of occupation or control of the premises?

The courts of this state, since the holding in Burdick v. Cheadle, supra, have applied generally the formula to many different factual circumstances. Langabaugh v. Anderson, 68 Oh St 131; Stackhouse v. Close, 83 Oh St 339; Marqua v. Martin, 109 Oh St 56; Berkowitz v. Winston, 128 Oh St 611; Ripple v. Mahoning National Bank, 143 Oh St 614; Cooper v. Roose, 151 Oh St 316.

"Liability in tort is an incident to occupation or control; occupation and control are not reserved by an agreement to make repairs." Berkowitz v. Winston, supra.

"3. In order to have the occupation or control of premises necessary to impose such legal duty with respect to the condition or use of premises, one must ordinarily have the power and the right to admit such individuals to the premises or to exclude them from the premises." Brown v. Cleveland Baseball Club, 158 Oh St 1. Approved and followed in syllabus 3, Pitts v. Housing Authority, 160 Oh St 129.

The lease executed by the Cities Service Oil Company, giving possession of the premises to its lessee, includes the following terms:

"Without limitation, any business conducted upon the demised premises shall be solely owned, operated and maintained by lessee, free of control, supervision, management or ownership by lessor, and without any agency or authority from lessor to lessee for the employment of others or in any other respect. Lessee shall exhibit on the demised premises signs of sufficient prominence and wording so as to advise the public that the business there conducted is owned, operated and maintained solely by lessee, and shall not permit on the premises any sign

or insignia or advertising device indicating that lessor is the owner or operator of the business to be conducted upon the demised premises."

There is evidence to the effect that: the lessees were required to sell the gasoline furnished by the lessor; the station was periodically inspected by the lessor for cleanliness and orders given in respect thereto; if maintenance problems of importance arose, the lessor was notified and repairs were made by it; "the major repair was testing and the removal and replacing of a gasoline tank which was underground, and there were minor items, maybe a light not working properly, or a lock"; "at various places" and "on various products" the name Cities Service was displayed; and the lessor advertised generally the sale of its product in the community.

The appellant, while recognizing the rule that liability in tort is an incident to occupation and control, argues that "The description of the rights of the lessee under the lease, and what rights the lessees had, were quite different. These partners could not sell products in the use of the premises that they desired. They were subjected to inspections and training employees of the lessor. Housekeeping, public relations and customer complaints, etc., were dictated by the lessor. In addition, the lessor carried on advertising campaigns to draw customers to the premises."

By this argument, the appellant means to say that, under such circumstances, the lessor reserved for itself, or exercised, a certain amount of occupation and control, and, as a consequence thereof, may be made liable for injuries to customers or guests of the tenant.

The writer of this opinion again refers to an opinion of his written several years ago bearing on this question—Chupek, Admr., v. City of Akron, 89 Oh Ap 266. In that case, the lessor, the city of Akron, retained certain rights in its lease relating to the operation of the business of the lessee. It is there said (and we here affirm the statement), quoting from an opinion of Cardozo, Judge:

"Liability in tort is an incident to occupation and control * * *. By preponderant opinion, occupation and control are not reserved through an agreement that the landlord will repair * * *. The tenant and no one else may keep visitors away till the danger is abated, or adapt the warning to the need * * *. The power of control necessary to raise the duty * * * implys something more than the right or liability to repair the premises. It implies the power and the right to admit people to the premises and to exclude people from them * * *. Cullings v. Goetz, 256 N. Y. 287, at p. 290, 176 N. E. 397. "See Berkowitz v. Winston, 128 Oh St 611, 193 N. E. 343, in which the opinion of Cardozo, C. J., in the New York case was cited with approval."

As we view the record before us and assuming that the lessor retained the right to do the things claimed by the plaintiff-appellant, the retention of such rights is in no particular connected with the operation of the business of draining fluids from the gas tanks of automobiles, or the maintenance and operation of a gas water heater on the premises. Insofar as this use of the leased premises is concerned, such use was under the entire control of the lessee.

It is further observed that no power was reserved in the landlord to

admit or exclude visitors or customers to the leased premises. This power was exclusively in the tenants.

That the maintenance and operation of the gas water heater was in violation of an ordinance of the city of Cleveland, we accept for the purposes of this decision; that it was in place when the tenants went into possession, we also accept as a fact. Be that as it may, the plaintiff-appellant was not a stranger to the premises, or to the business. He was rightfully upon the premises as an invitee, business visitor or customer of the tenant, and by the sole permission of the tenant; and his only right was that of a customer. Under such circumstances, McIvaine, J., has set the rule for Ohio, in Burdick v. Cheadle et al, supra, as follows:

"The general rule of law undoubtedly is, that persons who claim damages on the account that they were invited into a dangerous place, in which they received injuries, must seek their remedy against the person who invited them. There is nothing in the relation of landlord and tenant which changes this rule. There is no implied engagement or promise on the part of a lessor, that the leased premises are in a safe condition, or that they are fit for the use to which the invitee intends to put them. If they be unsafe or unfit it is the duty of the tenant to make them safe, or to fit them for the intended use; and the landlord may reasonably expect that the tenant will do so. * * *"

While various members of the Court of Appeals of Ohio may be in disagreement with a rule that absolves a landlord from liability for injuries to a customer of its tenant when the landlord leases property and accessories thereon, which it knows will probably be used in the business of the tenant, and, if used in the condition it was when possession was transferred, will be in violation of the safety provisions of a municipal ordinance, and the customer receives injuries as a result of the unlawful use of the leased accessories; nevertheless, the members of the Court of Appeals must place themselves in the position in which Judge Shauck (a former member of the Supreme Court of Ohio) found himself when he was a member of the Circuit Court. The distinguished judge said:

"* * * a subordinate tribunal ought not to reason itself into insubordination. * * * we must assume that the Supreme Court gave the consideration which it thought due to all questions which were involved in the conclusion which it reached." State, ex rel. Widner, v. Bowersock, 1 ·O. C. C. 127, at p. 129.

On the basis of the legal propositions heretofore set forth, we affirm the judgment entered for the defendant-appellee in the Court of Common Pleas.

Judgment affirmed.

HUNSICKER and GRIFFITH, JJ, concur.